CLAUDE E. DEANS AND WIFE, MURVEREE F. DEANS v. BEN J. LAYTON

No. 877SC923

(Filed 5 April 1988)

1. **Husband and Wife § 3— tenants by the entirety—only one named as vendor— signing tenant acting as agent for non-signing tenant**

   A paper writing memorializing a contract for the purchase and sale of land which names as vendor only one of the two tenants by the entirety is enforceable against the vendee where there is uncontradicted evidence that the cotenant signing the contract was acting as agent for the non-signing cotenant.

2. **Cancellation and Rescission of Instruments § 4; Vendor and Purchaser § 6— purchase of land which would not "perk"—risk assumed by purchaser**

   In an action for breach of contract for the purchase of land, defendant assumed the risk of mistake as to what percentage of the land would "perk," and he was precluded as a matter of law from seeking rescission of the contract on the ground of mutual mistake, where both plaintiff and defendant were experienced in matters involving the purchase and sale of land; each had been involved previously in residential land development; defendant inspected the property with plaintiff, saw that it was very wet, and observed the presence of "bull grass," which usually indicates drainage problems; plaintiff did not state to defendant that he had had the property inspected by an engineer and that every lot would "perk"; and defendant was not prevented from conducting a survey of the property himself or from having the water levels checked, but he failed to do so.

3. **Fraud § 12; Vendor and Purchaser § 6— drainage of land—no material misrepresentation**

   Defendant failed to present a forecast of evidence sufficient to raise any question of fact as to misrepresentation or fraud on the part of plaintiffs in the sale of land where the two parties to the contract were experienced businessmen dealing at arm's length; plaintiff did not make any false representation concerning the drainage of the property in question; and no one prevented defendant from having the property surveyed or from having someone check the water levels of the soil prior to his execution of the contract.

4. **Vendor and Purchaser § 1— contract to convey land supported by reciprocal consideration**

   A contract was formed by plaintiffs and defendant and it was supported by reciprocal consideration where plaintiffs promised to sell the property in question to defendant for $180,000, and defendant agreed to pay to plaintiffs the purchase price on or before a certain date.

5. **Rules of Civil Procedure § 18— plaintiff's motion to join wife properly allowed**

   The trial court did not err in granting plaintiff's motion to join his wife as an additional party and in ordering that she be allowed to adopt plaintiff's complaint as amended, since neither the amendment nor the joinder brought

Deans v. Layton

out any new matters, altered the theory of the case, or in any way surprised defendant.

6. **Interest § 2— contract to convey land—interest properly awarded from time of agreed-on closing to actual closing**

In an action for breach of contract for the purchase of property, the trial court did not err in ordering defendant to pay plaintiffs interest from the agreed-on date for closing the sale to the date of the actual closing. N.C.G.S. § 24-5(a).

7. **Vendor and Purchaser § 5— specific performance—showing of inadequacy of legal remedy not required**

Where land is the subject matter of the parties' agreement, the vendor, like the purchaser, may seek specific performance without showing the inadequacy of a legal remedy.

APPEAL by defendant from *Brown (Frank R.), Judge.* Judgment entered 28 May 1987 in Superior Court, NASH County. (By consent of the parties, the motion was heard and judgment entered out of session and out of the county.) Heard in the Court of Appeals 1 March 1988.

On 30 October 1985, plaintiff Claude E. Deans commenced this action seeking damages in the amount of $180,000.00 plus interest for breach of a contract for the purchase and sale of land or, alternatively, for specific performance of the contract. Defendant filed an answer containing a motion to dismiss plaintiff's complaint pursuant to G.S. 1A-1, Rule 12(b)(6), and raising, among other defenses, the affirmative defenses of mutual mistake, misrepresentation, and lack of consideration. Defendant also asserted counterclaims for costs incurred, punitive damages, and treble damages for unfair and deceptive trade practices. The mutual mistake and misrepresentation defenses and counterclaims were based on alleged statements by plaintiff Claude Deans that the property contained 104 lots when in fact, on account of drainage conditions, a substantial portion of the 100.8 acres was unsuitable for subdivision into residential lots. Plaintiff Claude E. Deans filed a timely reply to defendant's answer and counterclaims.

On 14 July 1986, plaintiff Claude E. Deans filed a motion for leave to amend his complaint to allege that he and his wife, Murveree F. Deans, together owned the property that is the subject of the contract in this controversy and that in the negotiations leading up to execution of the contract, in the execution of the contract, and in the institution of this action he was acting on his

own behalf and as agent on behalf of Murveree F. Deans. On 19 August 1986, plaintiff Claude E. Deans filed a motion to join Murveree F. Deans as an additional party plaintiff in the action. The trial court denied defendant's motion to dismiss plaintiff's complaint, allowed plaintiff Claude E. Deans' amendment to the complaint, and ordered that Murveree F. Deans be joined as plaintiff and that she be allowed to adopt the complaint of the plaintiff as amended.

Thereafter, plaintiffs Claude E. Deans and Murveree F. Deans moved for summary judgment pursuant to G.S. 1A-1, Rule 56. After a hearing and after consideration of the pleadings, affidavits, exhibits, and depositions, the trial court granted summary judgment in favor of plaintiffs, ordering specific performance of the contract entered into by the parties for the purchase and sale of land and awarding to plaintiffs interest at the judgment rate from 15 May 1985 to the date of closing. To this judgment and to the order denying his motion to dismiss plaintiffs' complaint pursuant to G.S. 1A-1, Rule 12(b)(6), defendant appeals.

*Poyner and Spruill, by Charles T. Lane, Ernie K. Murray, and Susan K. Nichols, for plaintiff-appellees.*

*Thomas W. King for defendant-appellant.*

PARKER, Judge.

On appeal defendant raises five assignments of error for consideration by this Court: (i) the trial court's denial of defendant's motion to dismiss and entry of summary judgment for plaintiffs where the contract was signed only by Claude E. Deans and the land was owned by plaintiffs as tenants by the entirety; (ii) the trial court's granting of plaintiffs' motion for summary judgment where defendant's affirmative defenses of mutual mistake, misrepresentation, and lack of consideration raised genuine issues of material fact; (iii) the trial court's granting of plaintiffs' motion for summary judgment where plaintiff Murveree F. Deans never served defendant with a complaint but only proceeded upon a theory of adoption of the amended complaint of Claude E. Deans; (iv) the trial court's order requiring defendant to pay to plaintiffs interest at the judgment rate from 15 May 1985 until the date of closing where the contract contained no term regarding interest; and (v) the trial court's order granting specific performance where

plaintiffs had an adequate remedy at law. We shall address these five issues seriatim.

## I.

[1] The first issue raised by this appeal is whether a paper writing memorializing a contract for the purchase and sale of land that names as vendor only one of the two tenants by the entirety is enforceable against the vendee. We hold that where, as in this case, there is uncontradicted evidence that the cotenant signing the contract was acting as agent for the non-signing cotenant, the contract is binding and enforceable against the vendee.

The case of *Reichler v. Tillman*, 21 N.C. App. 38, 203 S.E. 2d 68 (1974), addresses the issue of the binding effect of a contract for the purchase and sale of land where only one of the two tenants by the entirety was named in and signed the contract. In *Reichler*, plaintiff-vendees sued defendants husband and wife for specific performance of a contract for the purchase and sale of land held by defendants as tenants by the entirety. The contract did not mention defendant-wife, and defendant-wife never signed the contract. *Id.* at 39, 203 S.E. 2d at 69. Defendant-wife pled the statute of frauds and moved the court for summary judgment in her favor. *Id.* at 39-40, 203 S.E. 2d at 69-70. This Court reversed the trial court's order granting partial summary judgment in favor of defendant-wife. *Id.* Treating the trial court's ruling as a judgment on the pleadings because the record on appeal contained only the pleadings, this Court held that the trial court erred in ordering entry of judgment for defendant-wife where plaintiffs could show that defendant-husband was authorized by his wife to act as her agent in contracting to sell the land belonging to both as tenants by the entirety. *Id.* at 40-41, 203 S.E. 2d at 70-71.

In the instant case, both plaintiffs submitted affidavits stating that plaintiff Murveree F. Deans expressly authorized plaintiff Claude E. Deans to act as her agent in all matters regarding the sale of the tract of land that is the subject of the contract in controversy; that plaintiff Claude E. Deans executed the contract both on his own behalf and as agent for plaintiff Murveree F. Deans; and that upon being informed of the execution of the contract, plaintiff Murveree F. Deans expressly consented to and ratified the execution of the contract by plaintiff Claude E.

Deans as her agent. Defendant has presented no forecast of evidence that might controvert the statements in plaintiffs' affidavits.

Although defendant assigns as error both the denial of his motion to dismiss plaintiffs' complaint pursuant to G.S. 1A-1, Rule 12(b)(6), and the allowance of plaintiffs' motion for summary judgment pursuant to G.S. 1A-1, Rule 56, these questions may be treated as one since where matters outside the pleadings are before the court, a motion to dismiss may be treated as a motion for summary judgment. G.S. 1A-1, Rule 12(b). A motion for summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). A defendant may prevail on a motion for summary judgment by proving that an essential element of plaintiff's claim is nonexistent, that plaintiff cannot produce evidence to support an essential element of his claim, or that plaintiff cannot surmount an affirmative defense which would bar the claim. *Bernick v. Jurden*, 306 N.C. 435, 440-441, 293 S.E. 2d 405, 409 (1982). When the plaintiff moves for summary judgment, plaintiff must establish that the facts as to each essential element of his claim are in his favor and that there is no genuine issue of material fact with respect to any essential element. *Development Corp. v. James*, 300 N.C. 631, 637, 268 S.E. 2d 205, 209 (1980); *Federal Land Bank v. Lieben*, 86 N.C. App. 342, 345, 357 S.E. 2d 700, 702-703 (1987). Once movant has met his burden, the "adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." G.S. 1A-1, Rule 56.

In the case before us, defendant has failed to rebut plaintiffs' evidence to support the agency relationship alleged in plaintiffs' amended complaint and has failed to show the existence of any material issue of fact as to agency. Defendant's first assignment of error is overruled.

## II.

Defendant's second assignment of error on this appeal is that the trial court erred in granting plaintiffs summary judgment because defendant's affirmative defenses of mutual mistake, misrep-

resentation, and lack of consideration raised genuine issues of material fact. We shall address each of these affirmative defenses separately.

A.

**[2]** Regarding the defense of mutual mistake, our Supreme Court has stated the following:

> "The formation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. Furthermore, a defense may be asserted when there is a mutual mistake of the parties as to the subject matter, the price, or the terms, going to show the want of a consensus *ad idem*. Generally speaking, however, in order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties."

*MacKay v. McIntosh*, 270 N.C. 69, 73, 153 S.E. 2d 800, 804 (1967) (quoting 17 Am. Jur. 2d, *Contracts* § 143 (1964)). However, a party who assumes the risk of mistake regarding certain facts may not seek to rescind a contract merely because the facts were not as he had hoped. *Financial Services v. Capitol Funds*, 288 N.C. 122, 139, 217 S.E. 2d 551, 562, 77 A.L.R. 3d 1036, 1053 (1975); *Howell v. Waters*, 82 N.C. App. 481, 488, 347 S.E. 2d 65, 70 (1986), *disc. rev. denied*, 318 N.C. 694, 351 S.E. 2d 747 (1987).

A party assumes the risk of mistake where:

> (a) the risk is allocated to him by agreement of the parties, or

> (b) he is aware, at the time the contract is made that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

    (c) the risk is allocated to him by the court on the ground
that it is reasonable in the circumstances to do so.

*Howell v. Waters*, 82 N.C. App. at 488, 347 S.E. 2d at 70 (quoting
Restatement (Second) Contracts § 154 (1979)).

    In this case, the discovery materials and affidavits presented
to the trial court showed that both defendant and plaintiff Claude
E. Deans were experienced in matters involving the purchase and
sale of land and that each had been involved previously in resi-
dential land development. In his deposition, defendant stated that
he inspected the property with plaintiff Claude E. Deans in De-
cember of 1984. He described this meeting as follows:

> [W]e were checking out, talking about the land. It was rain-
> ing, and it was very wet, and I know I remember asking him
> about some old bull grass there. First I asked him if that had
> been tested or if that would pass the perk test. And he had
> told me on this one — now this is not exact words, but this is
> what was brought up, or said, or meant to be, or my under-
> standing of it. He said that it had been approved, that there
> was a map that had been drawn off with 104 lots and that's
> what he was selling me on the hundred and something acres.
> It's supposed to have been so many acres, 108 I believe, 104.

When asked to describe the land, defendant stated,

> I believe it had grown cotton on top of the hill on the
> left. And on the right side it was weed, and grass, and bull
> grass in there. And I particularly asked Mr. Deans about
> that, because I was wondering why that hadn't been tended
> with the other tended. And if you go there today, I think
> you'll find the stalks and all still there from that time. He
> assured me — and we went on up on top of a hill now — that he
> has three mobile homes sitting up there. And then in front of
> those mobile homes is just as pretty a land that you can ask
> for, and we drove up that far. And the land on the left and
> some of it on the right where the hill kind of slopes over a lit-
> tle bit was good, no problem about perking. But the one
> there as we first drove on, there was a doubt. And I asked
> him and he told me it was — that it would perk. And I said
> well, what about all the land all the way back. And it was so
> wet that we couldn't go any farther than those mobile homes.

Now the mobile homes is [sic] only, oh, I dare say a third of the way down. Well, the path there to the mobile homes is only about a third of the depth of the farm. And that's where we had to turn around.

. . . .

We—it was so wet, Mr. Deans didn't want to get out, and neither did I want to get out there and wade through the mud and the water and the rain. Okay, the land did not have debris on it. And from the looks at it from where these mobile homes was [sic], it looked like it was well drained and everything else all the way down just as to observe it.

. . . .

When we—when we first drove on that land, and I think if you'll go out there today and look at it, on the right side of the road, there's bull grass or that's what we call it. Normally it's when you see bull grass, you know it's a problem of dampness and wet. And most of the time it won't perk.

When asked if plaintiff Claude E. Deans ever stated to defendant that he had had the land "perked," defendant replied, "No, he never told me he had it perked, but he assured me it would." Defendant stated, "I'm not saying that Mr. Deans knew the condition of all the back. I don't know whether he ever had anyone down there or not." Later in his deposition, defendant stated, "I'm not saying that Mr. Deans knew that the soil, all of it was that bad." When asked if plaintiff Claude E. Deans ever told defendant that he had had the property inspected by an engineer and that every lot would "perk," defendant answered, "He told me he had 104 lots there, and they were already drawn off, and told me where the map was." Defendant stated that he went to the office of Mr. Bill McIntyre, a civil engineer, to get a copy of the 104-lot plat of the property. In his deposition, defendant described his visit to Mr. McIntyre's office as follows:

Mr. McIntyre wasn't in there. I talked with Van. He wasn't too familiar with the land, but he told me that land was basically mighty wet out there, and that I'd better check it good. They do all of my surveying and handling the developments.

---

---

Defendant conceded that no one prevented him from conducting a survey of the property himself or from having someone check the water levels. Defendant also acknowledged that nearly every piece of land that he had ever bought had certain areas that would not "perk" and that a purchaser cannot know what lots will "perk" until the land is examined, surveyed, and staked off.

After looking at the property on 20 December 1984, plaintiff Claude E. Deans and defendant discussed the price of the land. According to defendant, plaintiff Claude E. Deans wanted $2,000.00 per acre, but defendant refused to pay that price. On 31 December 1984, plaintiff Claude E. Deans and defendant met at defendant's office and reached an agreement for the purchase and sale of the property for a price of $180,000.00. Defendant then drew up a written contract to that effect and both defendant and plaintiff Claude E. Deans signed the contract.

Defendant did not arrange for an inspection of the property by a surveyor/engineer until June of 1985. The surveyor/engineer estimated that approximately 32.4 acres of the property would be unsuitable for septic tanks and well systems because of wet or poorly drained soil with a high water table. Accordingly, the number of suitable lots on the property was between sixty-five and seventy-six. This information was corroborated by a representative of the county health department who based his evaluation on his general experience with poor drainage and wet soil in the area as well as the presence of "saw grass" (or bull grass) on the property.

Defendant was experienced in real estate transactions and residential land development and was dealing at arm's length in entering into this agreement. Therefore, from the record before us, we must conclude that defendant assumed the risk of mistake as to what percentage of the land would "perk," and he is precluded as a matter of law from seeking rescission of the contract.

### B.

[3]  In order to make out a claim for fraud or misrepresentation, the party asserting it must show (i) false representation or concealment of a material fact, (ii) reasonably calculated to deceive, (iii) made with intent to deceive, (iv) which does in fact deceive, (v)

resulting in damage to the injured party. *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (1974); *Shreve v. Combs*, 54 N.C. App. 18, 21, 282 S.E. 2d 568, 571 (1981).

Defendant has, first of all, failed to forecast any evidence that plaintiff Claude E. Deans made any representation concerning the property that was "false," "reasonably calculated to deceive," or "made with intent to deceive." In his deposition, defendant stated, "I'm not saying that Mr. Deans knew the condition of all the back [of the property]. I don't know whether he ever had anyone down there or not." Defendant also stated, "I'm not saying Mr. Deans knew that the soil, all of it was that bad. I'm not sure that he ever done [sic] it, but he told me that 104 lots was what was there and was what I could count on and he told me that absolute." Defendant also testified, "He [Mr. Deans] told me he had 104 lots there, and they were already drawn off, and told me where the map was." From the record, there is no dispute that such a map showing 104 lots existed. For the representation to be calculated to deceive, the person making the representation must have known the representation was false when it was made or have made the representation recklessly without knowledge of its truth and as a positive assertion. *See Johnson v. Insurance Co.*, 300 N.C. 247, 253, 266 S.E. 2d 610, 615 (1980).

Furthermore, defendant acknowledged he was warned to check the property because the land was "mighty wet." Our Supreme Court has stated the following regarding alleged misrepresentation in real property transactions:

A purchaser of property seeking redress on account of loss sustained by reliance upon a false representation of a material fact made by the seller may not be heard to complain if the parties were on equal terms and he had knowledge of the facts or means of information readily available and failed to make use of his knowledge or information, unless prevented by the seller. But the rule is also well established that one to whom a definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon. The right to rely on representations is inseparably connected with the correlative problem of a duty of a representee to

use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest.

*Fox v. Southern Appliances*, 264 N.C. 267, 271-272, 141 S.E. 2d 522, 526 (1965). This Court has held that where parties deal at arm's length, where the purchaser has ample opportunity to inspect the land or have the land inspected by experts prior to the sale, and where the seller has not induced the purchaser to forego inquiry or investigation of the land, no action for fraud will lie. *Williams v. Jennette*, 77 N.C. App. 283, 335 S.E. 2d 191 (1985) (summary judgment for defendants held proper where plaintiffs failed to allege they were fraudulently induced to forbear inquiries concerning the suitability of land for residential use); *Goff v. Realty and Insurance Co.*, 21 N.C. App. 25, 203 S.E. 2d 65, *cert. denied*, 285 N.C. 373, 205 S.E. 2d 97 (1974) (directed verdict for defendants was proper where plaintiffs had full opportunity to view topography of lot and to inquire as to septic tank problems in the area). *See also Harding v. Insurance Co.*, 218 N.C. 129, 10 S.E. 2d 599 (1940) (nonsuit for defendant was improperly denied where there was no evidence that plaintiff was fraudulently induced to forbear inquiries as to defects in the water, heating, plumbing, and roof of hotel).

As stated earlier, the two parties to the contract in the case before us were experienced businessmen dealing at arm's length. Defendant admitted in his deposition that no one prevented him from having the property surveyed or from having someone check the water levels of the soil prior to his execution of the contract. Therefore, under applicable principles of law, defendant has failed to present a forecast of evidence sufficient to raise any question of fact as to misrepresentation or fraud on the part of plaintiffs.

## C.

[4] In order for a contract to be enforceable in this State it must be supported by consideration. *Investment Properties v. Norburn*, 281 N.C. 191, 195, 188 S.E. 2d 342, 345 (1972). Consideration has been defined as some benefit or advantage to the promisor or some loss or detriment to the promisee. *Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 147, 139 S.E. 2d 362, 368 (1964). Mutual promises may constitute reciprocal consideration to support a contract.

*See Penley v. Penley*, 314 N.C. 1, 16, 332 S.E. 2d 51, 60 (1985); *Allied Personnel v. Alford*, 25 N.C. App. 27, 30, 212 S.E. 2d 46, 48 (1975).

Plaintiffs promised to sell the property to defendant for $180,000.00. In exchange, defendant agreed to pay to plaintiffs the purchase price of $180,000.00 on or before 31 March 1985. A contract was thereby formed and was supported by reciprocal consideration. As discussed earlier, there is uncontroverted evidence that plaintiff Claude E. Deans was acting both for himself and as agent for plaintiff Murveree F. Deans when he signed the contract. Therefore, defendant's contention that the promises of plaintiffs and defendant are not mutual is without merit.

## III.

**[5]** The third issue raised by defendant in this appeal is whether the court below erred in granting plaintiffs' motion for summary judgment where plaintiff Murveree F. Deans became a party to the action only after the trial court granted plaintiff Claude E. Deans' motion to join her as an additional party and ordered that she be allowed to adopt the complaint of plaintiff Claude E. Deans as amended. Defendant contends that plaintiff Murveree F. Deans is not properly a party in this action because she did not file a separate complaint, she was not named in the caption to the amended complaint, she has not made a demand for relief, and she was never named in an issued summons. This contention is without merit.

Under our Rules of Civil Procedure, amendments to pleadings should be liberally allowed. Discretion in allowing amendments to the pleadings is vested in the trial judge, and his ruling will not be disturbed absent a showing of prejudice to the opposing party. *Goodrich v. Rice*, 75 N.C. App. 530, 533, 331 S.E. 2d 195, 197 (1985). Similarly, whether proper parties will be ordered joined rests within the sound discretion of the trial judge. *Long v. City of Charlotte*, 306 N.C. 187, 212, 293 S.E. 2d 101, 117 (1982). *See also* G.S. 1A-1, Rule 20(a).

Defendant has failed to show that the trial judge abused his discretion in ordering plaintiff Murveree F. Deans joined as an additional party plaintiff and allowing her to adopt the amended complaint of plaintiff Claude E. Deans. Neither the amendment of

the complaint nor the addition of plaintiff Murveree F. Deans to the action brought out any new matters, altered the theory of the case, or in any way surprised defendant. Defendant has shown no prejudice resulting from the amendment or the joinder. *See Goodrich v. Rice, supra* (defendant showed no abuse of discretion or prejudice resulting from amendment adding additional plaintiff); *Burgess v. Trevathan,* 236 N.C. 157, 72 S.E. 2d 231 (1952) (under prior law, court had discretion to bring in as additional plaintiff insurance company that had interest in subject of action and in relief demanded).

IV.

[6] Defendant next argues that the trial court erred in ordering defendant to pay plaintiffs interest from 15 May 1985, the agreed-on date for closing the sale, to the date of the actual closing because the contract did not provide for payment of interest. This argument is without merit.

General Statute 24-5(a) (1985) (amended 1987) states the following:

Contracts.—In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach. The fact finder in an action for breach of contract shall distinguish the principal from the interest in the award, and the judgment shall provide that the principal amount bears interest until the judgment is satisfied. Interest on an award in a contract action shall be at the contract rate, if the parties have so provided in the contract; otherwise, it shall be at the legal rate.

In general, interest is the compensation allowed by law or fixed by the parties for the use, forbearance, or detention of money. *Ripple v. Mortgage Corp.,* 193 N.C. 422, 424, 137 S.E. 156, 157 (1927); *Parker v. Lippard,* 87 N.C. App. 43, 49, 359 S.E. 2d 492, 496, *modified and aff'd,* 87 N.C. App. 487, 361 S.E. 2d 395 (1987).

The contract executed by the parties contained a performance date of 31 March 1985. This date was later changed by mutual consent of the parties to 15 May 1985. On 15 May 1985, plaintiffs were ready, willing, and able to comply with the contract and to deliver to defendant a deed to the property that was the subject of the purchase contract; by the terms of the contract,

Deans v. Layton

plaintiffs were to receive, in exchange, the sum of $180,000.00. However, because of defendant's failure to perform, plaintiffs were denied the use of the $180,000.00 from 15 May 1985. The contract for the purchase and sale of the property did not provide for the payment of any interest by defendant because the parties contemplated defendant's performance and not defendant's breach of the contract. Therefore, the trial court properly ordered defendant to pay plaintiffs interest on the purchase price at the judgment rate from 15 May 1985 to the date of closing.

V.

[7] As a final matter, defendant contends that the trial court erred in affording plaintiffs, the vendors of the property, the remedy of specific performance by defendant, the purchaser of the property, where plaintiffs had an adequate remedy at law for money damages. We disagree with this contention.

The law in North Carolina has long recognized that a vendor has the same right as the purchaser to enforce an executory contract for the purchase and sale of real property by specific performance. *See, e.g., Springs v. Sanders*, 62 N.C. (Phil. Eq.) 67 (1866); *Bryson v. Peak*, 43 N.C. (8 Ire. Eq.) 310 (1852). Where land is the subject matter of the parties' agreement, the vendor, like the purchaser, may seek specific performance without showing the inadequacy of a legal remedy. *Springs v. Sanders, supra. See also* 71 Am. Jur. 2d *Specific Performance* §§ 112, 115 (1973). Early cases base this remedy upon the principle of mutuality, "that since the *purchaser* could obtain specific performance (land being unique and no substitute being satisfactory), then the *vendor* ought to be able to enforce his side of the bargain through an identical or similar remedy." D. Dobbs, Remedies § 12.13 (1973) (citing *Springs v. Sanders, supra*). However, modern authorities recognize other valid reasons for affording the vendor in a land sale contract the remedy of specific performance, such as the difficulty of locating a willing buyer with acceptable credit, especially where the value of the property is declining. *See* Dobbs, *supra*. Therefore, the court below did not err in granting specific performance in favor of plaintiffs as vendors in the contract for the purchase and sale of land.

For the reasons stated above, the trial court's entry of summary judgment in favor of plaintiffs ordering specific performance of the land sale contract executed by the parties is

Affirmed.

Judges ARNOLD and BECTON concur.