Vanguard Pai Lung, LLC v. Moody, 2019 NCBC 38.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 13891

VANGUARD PAI LUNG, LLC; and
PAI LUNG MACHINERY MILL CO.
LTD.,

Plaintiffs,

v.

WILLIAM MOODY; NOREEN
MOODY; MARY KATE MOODY;
MICHAEL MOODY; NOVA
TRADING USA, INC.; and NOVA
WINGATE HOLDINGS, LLC,

Defendants.

WILLIAM MOODY; NOVA
TRADING USA, INC.; and NOVA
WINGATE HOLDINGS, LLC,

Counterclaim Plaintiffs,

v.

VANGUARD PAI LUNG, LLC; and
PAI LUNG MACHINERY MILL CO.
LTD.,

Counterclaim Defendants.

**ORDER AND OPINION
ON PLAINTIFFS' MOTION
TO DISMISS COUNTERCLAIMS**

1.      This case arises out of disputes between the members and managers of Vanguard Pai Lung, LLC ("Vanguard"), a North Carolina limited liability company. Vanguard and its majority member, Pai Lung Machinery Mill Co. ("Pai Lung"), brought this suit against six defendants: William Moody, Vanguard's former President and Chief Executive Officer; Nova Trading USA, Inc. ("Nova Trading"), Vanguard's minority member and a company wholly owned by Moody; Nova Wingate Holdings, LLC, another company owned by Moody; and three of Moody's family

members. In short, Plaintiffs allege that Moody has been siphoning cash and assets from Vanguard to benefit himself and his family for the better part of a decade.

2. Defendants deny any wrongdoing and claim to be the real victims. Moody, Nova Trading, and Nova Wingate Holdings have asserted counterclaims premised on allegations that Pai Lung used its majority position to control Vanguard, force Moody out of the business, and frustrate the minority rights of Nova Trading. In addition to asserting sundry counterclaims for breach of contract and breach of fiduciary duty, Moody and Nova Trading ask the Court to dissolve Vanguard.

3. Vanguard and Pai Lung have moved to dismiss many but not all of the counterclaims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, the Court **DENIES** the motion.

> *Womble Bond Dickinson (US) LLP, by Matthew F. Tilley, Russ Ferguson, and Patrick G. Spaugh, and Perkins Coie LLP, by John P. Schnurer, Sean T. Prosser, John D. Esterhay, and Yun (Louise) Lu, for Plaintiffs/Counterclaim Defendants Vanguard Pai Lung, LLC and Pai Lung Machinery Mill Co. LTD.*
>
> *Johnston, Allison & Hord, P.A., by Patrick E. Kelly, Michael J. Hoefling, and David V. Brennan, for Defendants/Counterclaim Plaintiffs William Moody, Nova Trading USA, Inc., and Nova Wingate Holdings, LLC.*
>
> *Burns, Gray & Gray, by John T. Burns, for Defendants Noreen Moody, Mary Kate Moody, and Michael Moody.*

Conrad, Judge.

## I.
## BACKGROUND

4. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the amended answer and counterclaims and its exhibits. (ECF No. 59 ["Countercl."].)

5.     Vanguard, a maker and seller of high-speed circular knitting machines, is the latest incarnation of a business once owned by Singer Co. and, more recently, by Monarch Knitting Machinery Corp.  (*See* Countercl. ¶¶ 10–12, 22.)  Formed in 2009, Vanguard had three initial members: Pai Lung (with a 51% interest), Nova Trading (with a 25% interest), and Leo Yates (with a 24% interest).  (Countercl. ¶ 33.)  Based in Taiwan, Pai Lung is one of the world's largest manufacturers of circular and flat weft knitting machines.  (Countercl. ¶ 15.)  Nova Trading, a North Carolina company, also manufactures knitting machines and is wholly owned by Moody.  (Countercl. ¶¶ 2, 13.)  Yates is one of Moody's longtime business partners and industry associates.  (Countercl. ¶ 10.)

6.     An Operating Agreement governs Vanguard's operations and the rights and obligations of its members.  The company is managed by a board of managers, which must consist of at least three but no more than five managers.  (Pls.'/Counter-Defs.' Mem. in Supp. Partial Mot. Dismiss Am. Countercl. Ex. A § 3.1(a), (c), ECF No. 63.1 ["Op. Agrmt."].)  At least initially, Pai Lung had authority to appoint three of the five managers, and Nova Trading and Yates had authority to appoint one each.  (Op. Agrmt. § 4.3(b)(i)–(iii).)  Once elected, the managers may make "all decisions with respect to the management of the business and affairs" of Vanguard by a majority vote, except for some actions that require a supermajority vote of the members.  (Op. Agrmt. § 3.1(a); *see also* Op. Agrmt. §§ 3.4, 4.4.)  Members, on the other hand, are not permitted to "take part in the management or control of the business" in their capacity as members.  (Op. Agrmt. § 4.2.)

7.     To fill its allotted three board positions, Pai Lung appointed its president and chairman, James Wang, along with Wang's father and uncle. (Countercl. ¶¶ 17, 34, 35.) The other two board slots went to Moody (appointed by Nova Trading) and Yates (self-appointed). (*See* Countercl. ¶ 34.) The company's initial officers, as named in the Operating Agreement, included Moody as President and Chief Executive Officer and Yates as Secretary and Chief Operating Officer. (Op. Agrmt. § 3.2(a).) According to Moody, he also had a separate oral employment agreement in his role as an officer. (Countercl. ¶ 30.)

8.     In 2011, Yates resigned, and Wang's father died. These events opened two vacancies on the board of managers. (Countercl. ¶¶ 37, 40.) Yates's position has never been filled, but Pai Lung filled its open seat with one of its agents. (Countercl. ¶¶ 41, 42.) When Yates resigned, he also sold his membership interest to Vanguard, leaving Pai Lung and Nova Trading as the two remaining members, with 67.1053% and 32.8947% interests, respectively. (Countercl. ¶ 38.)

9.     That was the status quo until 2017 when Moody and Wang locked horns over company management. (Countercl. ¶¶ 45, 51.) To start, Pai Lung insisted on hiring Penny Peng, a Pai Lung employee and agent, as Vanguard's financial manager. (Countercl. ¶¶ 47, 48.) Moody thought the move was a fiasco. He objected to Peng's qualifications and her cumbrous practice of consulting Wang, halfway around the globe, before making a decision. (Countercl. ¶¶ 49, 50.) The situation only worsened when Wang began ignoring communications from Moody and others.

(*See* Countercl. ¶ 51.) Then, in November 2017, the board of managers—chaired by Wang—voted to remove Moody as President. (Countercl. ¶¶ 36, 52.)

10. At the same time, Peng began withholding commission payments from Nova Trading. (Countercl. ¶ 62.) These payments were part of an alleged agreement ("Commission Agreement") made among Pai Lung, Nova Trading, and Vanguard in January 2017. (Countercl. ¶¶ 55–58, 60–61.) In a nutshell, Vanguard would pay increased prices for parts and machines that it purchased from Pai Lung, and Nova Trading would in turn receive a commission of five percent on parts and ten percent on machines. (Countercl. ¶ 56.) In effect, the Commission Agreement served to offset the decrease in distributions to Nova Trading that would result from the increased prices being paid by Vanguard to Pai Lung. (Countercl. ¶ 60.)

11. Moody also claims that Vanguard refused to pay him a profit-sharing bonus for 2017. (Countercl. ¶ 71.) According to Moody, he agreed at the beginning of 2017 to assume additional responsibilities in exchange for a fifteen percent profit-sharing bonus, to be paid annually to Moody or Nova Trading ("Profit-Sharing Agreement"). (Countercl. ¶¶ 68, 69.) That payment was never made. (Countercl. ¶ 69.)

12. In mid-2018, a majority of the board of managers terminated Moody's employment as Chief Executive Officer. (Countercl. ¶ 52.) Two months later, Vanguard and Pai Lung filed this suit. They allege that Moody, as officer and manager of Vanguard, orchestrated a massive fraud on the company for the past ten years, siphoning money and assets for the benefit of himself and his family.

13.    Moody and Nova Trading[1] respond that they are the victims of a scheme by Wang and Pai Lung to take complete control of Vanguard.  (*See* Countercl. ¶ 53.) Today, Moody remains a Vanguard manager, and Nova Trading remains a member, but they allege that they have been effectively sidelined by Pai Lung and the Pai Lung-controlled board of managers.  (*See* Countercl. ¶¶ 52–54.)  In their amended answer and counterclaims, Moody and Nova Trading assert twelve counterclaims for, among other things, breaches of the Operating Agreement, the Commission Agreement, the Profit-Sharing Agreement, and Moody's oral employment agreement. They further assert that Pai Lung, as majority member, owed a fiduciary duty to Nova Trading, as minority member, and breached that duty.  And they seek judicial dissolution of Vanguard.

14.    In this motion, Pai Lung and Vanguard seek to dismiss eight of the twelve counterclaims.  (Partial Mot. Dismiss Am. Countercl., ECF No. 62.)  The motion has been fully briefed, and the Court held a hearing on April 17, 2019. (ECF No. 66.)  The motion is ripe for decision.

## II.
## ANALYSIS

15.    A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the" disputed pleading, here the amended counterclaims.  *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  The motion should be granted only when: (1) the pleading "on its face reveals that no law supports" the

---

[1] The merits of this motion do not implicate the third counterclaimant, Nova Wingate Holdings, or any of the remaining defendants.

asserted claim; (2) the pleading "on its face reveals the absence of facts sufficient to make a good claim;" or (3) the pleading "discloses some fact that necessarily defeats" the claim. *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (citation and quotation marks omitted).

16. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the counterclaims as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). The Court may consider documents that are the subject of the counterclaims and to which the counterclaims specifically refer without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (quoting *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847).

## A. Contract Claims

17. Four disputed counterclaims relate to contracts that were allegedly breached around the time that Vanguard's board terminated Moody from his official positions. As alleged, Vanguard withheld commissions from Nova Trading under the Commission Agreement, refused to pay any bonus under the Profit-Sharing Agreement, and failed to pay Moody for accrued vacation time as required by his oral employment agreement. (Countercl. ¶¶ 126, 132, 143.) Moody and Nova Trading

also allege that Vanguard breached the implied covenant of good faith and fair dealing in each contract. (Countercl. ¶¶ 147, 148.) These four counterclaims are asserted against only Vanguard.

18. A theme of Vanguard's brief in support is that the allegations lack detail and are not supported by corroborating evidence. Vanguard describes the alleged contracts as "vaguely-articulated." (Pls.'/Counter-Defs.' Mem. in Supp. Partial Mot. Dismiss Am. Countercl. 7, ECF No. 63 ["Mem. in Supp."].) It contends that the allegations omit, among other things, who engaged in contract negotiations, when the negotiations happened, where the contracts were finalized, and why Vanguard would supposedly have been motivated to enter into them. (*See, e.g.*, Mem. in Supp. 8, 10, 11; *see also* Pls.'/Counter-Defs.' Reply in Supp. Partial Mot. Dismiss Am. Countercl. 4, 5, ECF No. 67 ["Reply Br."].) It also questions the veracity of several allegations— for example, that certain e-mails were sent or that commission payments were made for part of 2017—because Moody and Nova Trading haven't supplied evidence to back them up. (*See* Mem. in Supp. 8; Reply Br. 3, 5 n.2.)

19. Two initial observations are necessary. First, claims for breach of contract are "not subject to heightened pleading standards." *AYM Techs., LLC v. Rogers*, 2018 NCBC LEXIS 14, at *52 (N.C. Super. Ct. Feb. 9, 2018). Rather, they must meet the usual, liberal standard of Rule 8, which requires only a "short and plain statement of the claim" sufficient to put the court and parties on notice of the events giving rise to the claim. N.C. R. Civ. P. 8(a)(1). It is enough to plead the "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19,

26, 530 S.E.2d 838, 843 (2000). When these elements are alleged, "it is error to dismiss a breach of contract claim under Rule 12(b)(6)," and our appellate courts routinely reverse trial court orders that require anything more. *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004); *see also, e.g., Barbarino v. Cappucine, Inc.*, 2012 N.C. App. LEXIS 305, at *7 (N.C. Ct. App. Mar. 6, 2012) (unpublished) (reversing dismissal of claim for breach of contract); *Sanders v. State Pers. Comm'n*, 197 N.C. App. 314, 322, 677 S.E.2d 182, 188 (2009) (same); *Schlieper v. Johnson*, 195 N.C. App. 257, 266, 672 S.E.2d 548, 554 (2009) (same).

20.    Second, to dismiss a claim under Rule 12(b)(6) for lack of evidentiary support would be error. "Perhaps the most fundamental concept of motions practice under Rule 12 is that evidence outside the pleadings . . . cannot be considered in determining whether the complaint states a claim on which relief can be granted." *Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775, 796 S.E.2d 120, 123 (2017). "Neither party has any evidentiary burden at this stage," and the counterclaims' "factual allegations must be taken as true." *Neier v. State*, 151 N.C. App. 228, 233, 565 S.E.2d 229, 232 (2002).

21.    Taken together, all of this means that stating a claim for breach of contract is a relatively low bar. As discussed below, the allegations of the amended counterclaims, though succinct, meet the minimal requirements of Rule 8 and binding appellate precedent.

1.  Commission and Profit-Sharing Agreements

22.   The parties dispute whether the Commission and Profit-Sharing Agreements must be in writing.  Vanguard contends that they must because both are effectively amendments to the Operating Agreement.  (*See* Mem. in Supp. 9 n.5; Reply Br. 2–4; Op. Agrmt. § 11.5.)  Even if Vanguard were right about that (which the Court need not decide now), it would not be a reason to dismiss the counterclaims.  Moody and Nova Trading expressly allege that both agreements were "contemporaneously memorialized."  (Countercl. ¶ 73.)  This is sufficient to allege a writing, assuming one was required, and must be accepted as true.  *See, e.g.*, *Priest v. Coch*, 2013 NCBC LEXIS 6, at \*18 (N.C. Super. Ct. Jan. 25, 2013) (taking allegation of written contract as true and denying motion to dismiss).

23.   Vanguard also argues that Moody and Nova Trading failed to allege essential contract terms, particularly consideration.  Not so.  The Commission Agreement is a three-party contract related to Vanguard's purchase of machines and parts from Pai Lung, apparently for resale in North and Central America.  (*See* Countercl. ¶¶ 55, 56; Op. Agrmt. § 4.9.)  Each party received some benefit: Pai Lung received increased prices for its products; Nova Trading received a percentage commission for those sales; and Vanguard received the products sold by Pai Lung.  (Countercl. ¶¶ 56, 57.)  Perhaps this was a bad deal, as Vanguard suggests, "multiplying the disadvantage" to it by requiring it to pay increased prices and fees to both its members.  (Mem. in Supp. 9.)  But "the parties to a contract," not the Court, "are the judges of the adequacy of the consideration."  *Hejl v. Hood, Hargett & Assocs.*,

*Inc.*, 196 N.C. App. 299, 305, 674 S.E.2d 425, 429 (2009). Taken as true, the allegations plead the existence of consideration, which our courts define "as some benefit or advantage to the promisor or some loss or detriment to the promisee." *Deans v. Layton*, 89 N.C. App. 358, 368, 366 S.E.2d 560, 567 (1988).

24. Likewise, in the Profit-Sharing Agreement, Vanguard agreed to pay a bonus in return for Moody's assumption of additional responsibilities. (*See* Countercl. ¶ 68.) This allegation adequately pleads consideration and provides all the notice that Rule 8 requires. Moody and Nova Trading did not need to go further and "identify what these additional responsibilities were, or how employment responsibilities could even be added to someone who was already CEO and President," as Vanguard contends. (Reply Br. 6.)

25. As an additional argument, Vanguard asserts for the first time in its reply brief that the parties to the Profit-Sharing Agreement are not stated clearly enough. (*See* Reply Br. 5.) It is doubtful whether this argument is timely, but in any event, the Court disagrees. As alleged, the profit-sharing bonus was due to "Nova Trading and/or Moody." (Countercl. ¶¶ 68, 69.) Taking this allegation in a light most favorable to Moody and Nova Trading, Moody took on additional duties in return for a bonus that he directed to be paid to himself or to his wholly owned company. That leaves some ambiguity, but not one that is insoluble or so unclear that Vanguard lacks notice of the events giving rise to the claim.

26. The Court has considered Vanguard's other arguments as to the level of detail given by the allegations about these two agreements and finds them all

unpersuasive. "There is no rule which requires a plaintiff to set forth in his complaint the full contents of the contract which is the subject matter of his action or to incorporate the same in the complaint by reference to a copy thereof attached as an exhibit." *RGK, Inc. v. U.S. Fid. & Guar. Co.*, 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977) (citation and quotation marks omitted). The allegations give Vanguard "sufficient notice of the events or transactions which produced the claim." *Sutton v. Duke*, 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970).

27.     Accordingly, the Court denies the motion to dismiss the counterclaims for breach of the Commission Agreement and the Profit-Sharing Agreement.

2.  Moody's Employment Agreement

28.     The third disputed contract is Moody's oral employment agreement. He alleges that Vanguard breached the employment agreement when it failed to pay him for accrued but unused vacation time. (Countercl. ¶¶ 140, 143.)

29.     Vanguard argues that there is no allegation that Moody's "oral employment agreement expressly included a vacation policy, whether from an employee handbook or elsewhere, that became a binding contract." (Mem. in Supp. 12.) But there is. The amended counterclaims allege that "Vanguard maintains a standard vacation policy that applies to all Vanguard employees" and that this vacation policy "was incorporated into the employment agreement between Moody and Vanguard, which is a valid and enforceable contract." (Countercl. ¶¶ 136, 141.)

30.     Next, Vanguard argues that "Moody was placed into the role of CEO and President through the Operating Agreement" and that, as a result, the terms of the

Operating Agreement supersede any alleged oral employment agreement. (*See* Mem. in Supp. 12; Reply Br. 7; Op. Agrmt. § 3.2(a)–(c).) It is entirely possible, however, that the Operating Agreement named the initial officers and that those officers also had separate employment agreements. There is no inherent conflict between the two. *See, e.g.*, *Roth v. Penguin Toilets, LLC*, 2011 NCBC LEXIS 46, at *12 (N.C. Super. Ct. Nov. 30, 2011) ("The Court's determination that the Employment Agreement contains the terms of Plaintiff's employment relationship with Defendant is not to say that a particular relationship can only be controlled by one document."); *see also Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *3–4 (N.C. Super. Ct. Feb. 8, 2017) (noting that LLC members executed individual employment agreements in addition to the operating agreement); *Chemcraft Holdings Corp. v. Shayban*, 2006 NCBC LEXIS 15, at *3–5 (N.C. Super. Ct. Oct. 5, 2006) (same).

31. Taking all allegations as true, as the Court must, Moody and Nova Trading have sufficiently alleged the existence of an employment agreement containing a vacation policy and a breach of that agreement. The Court denies the motion to dismiss the counterclaim for breach of the employment agreement.

3. Implied Covenant of Good Faith and Fair Dealing

32. Moody and Nova Trading also adequately state a claim for breach of the implied covenant of good faith and fair dealing as to these three contracts. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C.

App. 378, 385, 781 S.E.2d 889, 894 (2016) (citation and quotation marks omitted). Here, Moody and Nova Trading allege the existence of three valid contracts and that Vanguard breached the contracts as part of a scheme to push them out of the business. (*See, e.g.*, Countercl. ¶¶ 45, 51–54, 65, 71, 133, 144, 148, 149.) These allegations are sufficient to state a claim for breach of the implied covenant. *See, e.g.*, *Sparrow Sys. v. Private Diagnostic Clinic, PLLC*, 2014 NCBC LEXIS 70, at *47–48 (N.C. Super. Ct. Dec. 24, 2014); *Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC LEXIS 24, at *18–19 (N.C. Super. Ct. Apr. 30, 2012). The Court denies the motion to dismiss as to this counterclaim.

### B. Fiduciary Claims

33. Nova Trading asserts claims for breach of fiduciary duty and constructive fraud against Pai Lung. Though these two causes of action are distinct, "an essential element of each claim is the existence of a fiduciary relationship." *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *23 (N.C. Super. Ct. Oct. 2, 2017). To state a claim for breach of fiduciary duty, Nova Trading must plead the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013). Constructive fraud requires Nova Trading to plead, in addition, that Pai Lung sought to benefit itself through the breach. *See White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 155–56 (2004).

34. The basis for these claims is that Pai Lung, the majority member of Vanguard, breached a fiduciary duty that it owed to Nova Trading, the minority

member. (*See* Countercl. ¶¶ 162, 172.) Pai Lung argues that there is no fiduciary relationship between Vanguard's members and also that Nova Trading failed to meet the heightened pleading standard for constructive fraud. (*See* Mem. in Supp. 14, 17.)[2]

35. As a general rule, members of an LLC do not owe a fiduciary duty to one another, but in some circumstances, "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016); *see also Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). A majority interest does not necessarily equate to control. It all depends on what the LLC's members agree to in the operating agreement. Because "an LLC is primarily a creature of contract," the members are generally free to arrange their relationship however they wish. *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 to 34-3 (rev. 7th ed. 2006)). Among other things, they may depart from statutory default rules, require supermajority votes for some or all company matters, and impose or eliminate fiduciary duties for members and managers. *See, e.g.*, *Claudio v. Sellers*, 2019 N.C. App. LEXIS 288, at *4–5 (N.C. Ct. App. Mar. 26, 2019) (supermajority requirement); *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *36 (N.C. Super. Ct. Oct. 21, 2016) (elimination of fiduciary duties);

---

[2] Pai Lung's opening brief includes the additional, conclusory assertion that, "even if Pai Lung owed [a fiduciary] duty, Nova Trading has not alleged sufficient facts demonstrating that Pai Lung breached that duty." (Mem. in Supp. 14.) This argument is unexplained and undeveloped, and the Court rejects it without further discussion.

*Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *15 (N.C. Super. Ct. Oct. 30, 2013) (statutory default rules).

36. This is one of the principal differences between LLC members and corporate shareholders. It has long been the rule that majority shareholders, by virtue of their majority status, hold control over the corporation and therefore owe a duty to protect the interests of minority shareholders, who "can act and contract in relation to the corporate property only through the former." *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951) (citation and quotation marks omitted). Minority members of an LLC have a much stronger position because, through "the freedom of contract," they are able "to obtain minority protections not available to shareholders of [a] closely-held corporation." *Blythe v. Bell*, 2013 NCBC LEXIS 17, at *14 (N.C. Super. Ct. Apr. 8, 2013).

37. Nova Trading obtained a number of such protections as part of Vanguard's Operating Agreement. By way of example, members may not take part in the company's management in their capacity as members. (Op. Agrmt. § 4.2.) Nova Trading is guaranteed the right to elect one manager to the board of managers. (Op. Agrmt. § 4.3(b)(i).) And a supermajority vote of the members is needed to amend the Operating Agreement, sell the business, remove a member, or take similarly vital actions. (Op. Agrmt. § 4.4.) The question is whether, as a matter of law, these protections blocked Pai Lung from exercising control over the LLC.

38. The answer is no, at least at this early Rule 12 stage. Nova Trading alleges that Pai Lung is Vanguard's majority member with an interest edging just over 67%.

(Countercl. ¶ 38.) It further alleges that Pai Lung dominates the board of managers, which has broad authority to act on behalf of the company. (*See* Op. Agrmt. § 3.1(a)(i)–(x).) The Operating Agreement gives Pai Lung the right to appoint three of the five possible managers, thus ensuring a majority. (Op. Agrmt. § 4.3(b)(ii).) And Pai Lung has filled those seats with its agents, all of whom are "acting for or on its behalf." (Countercl. ¶¶ 43, 44.)

39. This type of managerial control is one of the clearest attributes of a controlling member of an LLC, just as control over a board of directors is an attribute of a controlling corporate shareholder. *See, e.g.*, *Plasman*, 2016 NCBC LEXIS 80, at *17–18, 25 (concluding that plaintiff sufficiently alleged existence of fiduciary duty by 55% majority member with "ultimate decision-making authority"); *Kelly v. Blum*, 2010 Del. Ch. LEXIS 31, at *54 (Del. Ch. Feb. 24, 2010) (citing control over board of managers as factor favoring existence of fiduciary duties for majority member under Delaware law); *see also Corwin*, 371 N.C. at 616–17, 821 S.E.2d at 737–38 (noting that, under Delaware law, a controlling stockholder is one who exercises actual control over the board). By contrast, this Court has cited the absence of managerial control as a reason supporting dismissal of a claim for breach of fiduciary duty brought by one LLC member against another. *See Strategic Mgmt. Decisions v. Sales Performance Int'l*, 2017 NCBC LEXIS 69, at *13 (N.C. Super. Ct. Aug. 7, 2017) (granting motion to dismiss in part because 60% majority member had power to designate only one of two managers).

40. Pai Lung insists that no fiduciary duty arises simply because it exercised its rights, including the right to appoint a majority of the board, pursuant to the Operating Agreement. (*See* Reply Br. 8–9.) But the cases it cites for that proposition are inapposite. This Court has refused to impose a fiduciary duty on *minority* members that exercise their voting rights by joining together to outvote a third member. *See Fiske*, 2016 NCBC LEXIS 22, at *9–10; *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *46–47 (N.C. Super. Ct. July 14, 2015); *Wortman v. Hutaff*, 2013 NCBC LEXIS 47, at *22–23 (N.C. Super. Ct. Oct. 29, 2013); *BOGNC, LLC v. Cornelius NC Self-Storage, LLC*, 2013 NCBC LEXIS 22, at *19 (N.C. Super. Ct. May 1, 2013).

41. These decisions underscore the obvious difference between backing a majority coalition and exercising majority control as of right. In the latter situation, it is the imbalance of power inherent in the relationship between majority and minority member that gives rise to a fiduciary duty. Thus, when the operating agreement confers controlling authority on the majority member, it owes a duty not to use its control to harm the minority, assuming no other provision disclaims such a duty. Here, Nova Trading has alleged that Pai Lung is not only the majority member but also that it exercises control through the board of managers, and the Operating Agreement does not address, much less disclaim, the duties that Pai Lung might owe other members. This is sufficient to survive a Rule 12 motion. *See Dunn Holdings I, Inc. v. Confluent Health LLC*, 2018 NCBC LEXIS 89, at *19 (N.C. Super. Ct. Aug. 24,

2018) (holding that plaintiff sufficiently alleged that 80% majority member was a controlling member).

42. To be clear, in permitting the claim to move forward, the Court does not hold that Pai Lung owed a fiduciary duty to Nova Trading. Pai Lung's control is considerable but not complete. Neither Pai Lung nor the board could dissolve the company, declare bankruptcy, or amend the Operating Agreement without Nova Trading's cooperation. (*See* Op. Agrmt. §§ 3.4, 4.4, 8.1, 8.3, 10.1.) These are serious limitations on Pai Lung's authority and meaningful protections for Nova Trading's minority interest, which could weigh against the existence of a fiduciary relationship in the context of a more developed evidentiary record.

43. At this stage, the facts stated in the amended counterclaims, along with the provisions of the Operating Agreement, suffice to allege the existence of a fiduciary relationship. The Court therefore denies the motion to dismiss as to the claim for breach of fiduciary duty.

44. Pai Lung also argues that the claim for constructive fraud should be dismissed because Nova Trading has not pleaded it with sufficient particularity. Our appellate courts have made clear that a claim of constructive fraud need not comply with the particularity requirements of Rule 9 as claims of actual fraud must. *See Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678–79 (1981). Rather, the amended counterclaims must allege "facts and circumstances '(1) which created the relation of trust and confidence, and (2) which led up to and surrounded the consummation of the transaction in which [the non-moving party] is alleged to have taken advantage

of his position of trust to the hurt of'" the movant. *Id.* at 85, 273 S.E.2d at 679 (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)) (alterations omitted).

45.     Nova Trading has satisfied this standard.  It has alleged a fiduciary duty based on Pai Lung's status as a controlling majority member of Vanguard.  It has further alleged that Pai Lung schemed to gain exclusive control over Vanguard.  (*See* Countercl. ¶¶ 45–53, 65, 71, 115, 167–69, 171–75.)  The amended counterclaim goes beyond mere "cursory allegations" and demonstrates the "facts and circumstances" giving rise to the claim.  *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 482, 593 S.E.2d 595, 599 (2004); *see also Global Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 159, at *23 (N.C. Super. Ct. Nov. 29, 2018).

46.     The Court denies the motion to dismiss the claim for constructive fraud.

### C.  Judicial Dissolution

47.     Nova Trading asserts two claims for judicial dissolution of Vanguard.  By statute, a member of an LLC may seek judicial dissolution when "it is not practicable to conduct the LLC's business in conformance with the operating agreement" or when "liquidation of the LLC is necessary to protect the rights and interests of the member."  N.C. Gen. Stat. § 57D-6-02(2).  Nova Trading invokes the statutory remedy on both grounds.  It also asserts, separately, that dissolution is appropriate based on the rule set forth in *Meiselman v. Meiselman*, which permits minority shareholders in closely held corporations to seek liquidation when their reasonable expectations have been frustrated.  *See* 309 N.C. 279, 307 S.E.2d 551 (1983).

48. Vanguard and Pai Lung argue that the claims fail because Nova Trading has not alleged that it is impracticable to operate the business or that liquidation is necessary to protect Nova Trading's interests. They contend that the various management disagreements set out in the amended counterclaims show only that Nova Trading is "unhappy with the terms of the Operating Agreement." (Mem. in Supp. 18.)

49. The Court concludes that Nova Trading has adequately stated a claim under section 57D-6-02(2). As discussed, Nova Trading has alleged that Pai Lung breached its fiduciary duty as part of a scheme to take exclusive control of Vanguard. If true, these improprieties could support a claim that dissolution is necessary to protect Nova Trading's interests. *See, e.g.*, *Dunn Holdings I*, 2018 NCBC LEXIS 89, at *31–32. Accordingly, the Court denies the motion to dismiss the claim for judicial dissolution under section 57D-6-02(2).

50. Likewise, the Court denies the motion to dismiss the *Meiselman* claim. "[O]ur courts have not yet decided whether and to what extent the principles of *Meiselman* apply to actions" to dissolve an LLC. *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *35 (N.C. Super. Ct. Mar. 15, 2019); *see also Pure Body Studios Charlotte, LLC v. Crnalic*, 2017 NCBC LEXIS 98, at *13 (N.C. Super. Ct. Oct. 18, 2017); *Brady v. Van Vlaanderen*, 2017 NCBC LEXIS 61, at *31–32 (N.C. Super. Ct. July 19, 2017). Such questions should be addressed on a more fully developed record. Particularly given that the section 57D-6-02(2) claim is moving forward, it would be premature to dismiss the *Meiselman* claim.

51.     Finally, it bears noting that it is not clear whether an LLC member may bring a freestanding *Meiselman* claim, as Nova Trading has here.   There is a reasonable argument that the legislature intended section 57D-6-02(2) to be the exclusive avenue for LLC members to seek judicial dissolution, though the application of section 57D-6-02(2) may be informed by *Meiselman* principles.  Neither side addressed this issue, however, so the Court leaves it for another day.

### III.
### CONCLUSION

52.     For all these reasons, the Court **DENIES** Vanguard and Pai Lung's partial motion to dismiss.


        **SO ORDERED**, this the 19th day of June, 2019.


                          /s/ Adam M. Conrad
                          Adam M. Conrad
                          Special Superior Court Judge
                           for Complex Business Cases