Cadieu Tree Experts, Inc. v. Wiedner, 2026 NCBC 35.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV054195-590

CADIEU TREE EXPERTS, INC.,
MARION CADIEU, AND JOSEPH
H. CADIEU JR.,

     Plaintiffs,

v.

DAIN WIEDNER, STEPHANIE
WIEDNER F/N/A STEPHANIE
REARDON INDIVIDUALLY AND
AS TRUSTEE OF THE 5 GULSETH
AVE REALTY TRUST, PATRICK G.
REARDON, DANIEL REARDON,
DOE 3, DOE 4, DOE 5, DOE 6, and
SKYLA FEDERAL CREDIT UNION,

Defendants,

v.

DAVID CADIEU, LUKE CADIEU,
and JAKE CADIEU

Third-Party Defendants.

**ORDER AND OPINION ON
PLAINTIFFS' MOTION TO DISMISS
AND MOTION TO STRIKE AND
MOTION TO DISMISS BY THIRD-
PARTY DEFENDANTS DAVID, LUKE,
AND JACOB CADIEU**

1.     **THIS MATTER** is before the Court upon Plaintiffs' Motion to Dismiss and Strike and Motion to Dismiss by Third-Party Defendants David, Luke, and Jacob Cadieu (collectively, the "Motions"). Plaintiffs' Motion to Dismiss and Strike ("Plaintiffs' Motion") was filed pursuant to Rules 12(b)(6), 13(h), and 12(f) of the North Carolina Rules of Civil Procedure (the "Rule(s)") on 13 June 2025 in the above-

captioned case.[1] The Motion to Dismiss by Third-Party Defendants David, Luke, and Jake Cadieu ("Third-Party Defendants' Motion") was filed pursuant to Rules 12(b)(6) and 13(h) of the Rules on 18 July 2025 in the above-captioned case.[2]

2. Having considered the Motions, the parties' briefs in support of and in opposition to the Motions, the First Amended Complaint[3] ("Amended Complaint"), the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** Plaintiffs' Motion and **GRANTS in part** and **DENIES in part** Third-Party Defendants' Motion.

*Hamilton Stephens Steele + Martin, PLLC, by Daniel J. Finegan, Alec Quint, Graham Bryce Morgan, and Michael Aaron Lay, for Plaintiffs Cadieu Tree Experts, Inc., Marion Cadieu, and Joseph H. Cadieu Jr. and Third-Party Defendants David Cadieu, Luke Cadieu, and Jake Cadieu.*

*James, McElroy & Diehl, P.A., by John R. Buric, for Defendants Dain Wiedner and Stephanie Wiedner.*

*Gardner Skelton PLLC, by Jon P. Caroll and Bruce J. Kennedy, for Defendants Patrick Reardon and Daniel Reardon.*

Shirley, Judge.

---

[1] (Mot. Dismiss & Strike [hereinafter, Pl.'s Mot.], ECF No. 28.)

[2] (Mot. Dismiss [hereinafter, "Third-Party Mot. Dismiss"], ECF No. 36.)

[3] (First Amended Compl. [hereinafter, "Am. Compl."], ECF No. 12.)

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact when ruling on motions to dismiss under Rule 12(b)(6). The following factual summary is drawn from relevant allegations in the counterclaims.[4]

4. Defendants Stephanie Wiedner ("Stephanie") and Dain Wiedner ("Wiedner") are adult citizens and residents of Mecklenburg County, North Carolina (collectively, the "Wiedner Defendants").[5]

5. Plaintiff Cadieu Tree Experts, Inc. ("Cadieu Tree") is a corporation organized and existing under the laws of North Carolina. Plaintiffs Marion Cadieu ("Marion") and Joseph H. Cadieu ("Joseph") are adult citizens and residents of Mecklenburg County, North Carolina (Marion, Joseph, and Cadieu Tree are collectively "Plaintiffs").[6]

6. Third-Party Defendants David Cadieu ("David"), Luke Cadieu ("Luke"), and Jake Cadieu ("Jake") are adult citizens and residents of Georgetown County, South Carolina (collectively, "Third-Party Defendants").[7]

---

[4] (Def. Stephanie Wiedner, Individually & Trustee of 5 Gulseth Ave Realty Trust's Answer to Pl.'s First Am. Compl., Affirmative Defenses, Counterclaims, and Third-Party Complaint [hereinafter, "Stephanie Countercl."], ECF No. 18; Def. Dain Wiedner's Answer to Pl.'s First Am. Compl., Affirmative Defenses, and Third-Party Complaint [hereinafter, "Dain Countercl."], ECF No. 19.)

[5] (Stephanie Countercl. ¶ 1-2; Dain Countercl. ¶ 1-2.)

[6] (Stephanie Countercl. ¶¶ 3-5; Dain Countercl. ¶¶ 3-5.)

[7] (Stephanie Countercl. ¶¶ 6-8; Dain Countercl. ¶¶ 6-8.)

7.     Stephanie joined Cadieu Tree in 2016 as an invoicing assistant. Her responsibilities included filing, processing invoices, and assisting with basic office administrative tasks as needed.[8]   In 2019, Stephanie took over Cadieu Tree's finances.[9]

8.     Between 2016 and 2022, Dain frequently assisted Stephanie with her duties at Cadieu Tree.[10]  In 2022, Dain was laid off from his position as a software consultant and began working full-time for Cadieu Tree.[11]   Dain secured several lucrative contracts for Cadieu Tree.[12]

9.     Between 2016 and 2019, Wiedner Defendants celebrated holidays with the Cadieu Family (Marion, Joseph, and Third-Party Defendants) and assisted the Cadieu Family with several personal matters.[13]  For instance, Stephanie frequently attended medical appointments with Joseph.[14]

10.     Wiedner Defendants allege that Cadieu Tree engaged in several improper business practices between 2016 and 2019.[15]  These include but are not limited to:

---

[8] (Stephanie Countercl. ¶ 11.)

[9] (Stephanie Countercl. ¶15.)

[10] (Dain Countercl. ¶ 13.)

[11] (Dain Countercl. ¶ 14.)

[12] (Dain Countercl. ¶ 19.)

[13] (Stephanie Countercl. ¶16.)

[14] (Stephanie Countercl. ¶ 17.)

[15] (Stephanie Countercl. ¶ 20.)

keeping employees off the payroll to reduce workers' compensation costs, paying employees' salaries and overtime in cash to avoid tax obligations, and concealing personal expenses as business expenses for tax write-offs.[16] Stephanie alleges that she halted these improper business practices when she took charge of Cadieu Tree's finances in 2019.[17]

11. Cadieu Tree's financial struggles peaked in 2024 after David demanded Cadieu Tree fund new LLCs for Jake and Luke, his sons.[18] Wiedner Defendants allege that David demanded that Stephanie disburse weekly payments of more than $2,000 to both Jake and Luke, even though neither company had such funds, and the sons did not perform work for Cadieu Tree.[19]

12. Jake and Luke were paid through Stephanie's personal Cash App and David instructed Stephanie to make the payments and reimburse herself through Cadieu Tree funds.[20] Wiedner Defendants allege that these funds have not been repaid and Cadieu Tree lacked the funds for Stephanie to reimburse herself on numerous occasions.[21]

---

[16] (Stephanie Countercl. ¶ 21.)

[17] (Stephanie Countercl. ¶ 22.)

[18] (Stephanie Countercl. ¶ 34; Dain Countercl. ¶ 25.)

[19] (Stephanie Countercl. ¶ 43; Dain Countercl. ¶ 34.)

[20] (Stephanie Countercl. ¶ 44; Dain Countercl. ¶ 35.)

[21] (Stephanie Countercl. ¶ 44; Dain Coutnercl. ¶ 35.)

13. Stephanie alleges that she frequently opted not to take a paycheck from Cadieu Tree because Cadieu Tree often had insufficient funds to pay its employees, and its payroll was already being funded by Stephanie's personal credit.[22] Specifically, she forwent paychecks totaling over eight months of full-time employment during her time at Cadieu Tree and commission payments on numerous contracts she was entitled to, including Cadieu Tree's most valuable contract with the City of Charlotte.[23]

14. Wiedner Defendants allege that, in or around July 2024, David called Wiedner Defendants and accused them of stealing from Cadieu Tree after reviewing the bank account and seeing payments made to Stephanie's credit cards.[24] David was aware that a majority of Cadieu Tree's expenses were paid through Stephanie's credit cards.[25] David became aggressive throughout the phone call, made threats towards Wiedner Defendants, and stated that he would shoot Wiedner Defendants in the face.[26]

15. In October 2024, Stephanie and Dain resigned from Cadieu Tree, citing their inability to endure harassment from David while also continuing to work for the

---

[22] (Stephanie Countercl. ¶ 49.)

[23] (Stephanie Countercl. ¶ 50.)

[24] (Stephanie Countercl. ¶ 62; Dain Countercl. ¶ 42.)

[25] (Stephanie Countercl. ¶ 63; Dain Countercl. ¶ 43.)

[26] (Stephanie Countercl. ¶ 64; Dain Countercl. ¶ 44.)

company.[27]  Cadieu Tree has failed to pay Stephanie the outstanding wages she was owed, an alleged $550,000.[28]  Stephanie has not received her Form W-2 for 2024 from Cadieu Tree.  Cadieu Tree has not provided a form W-2 to pay any of its employees.[29]

16.    Despite Dain's work for Cadieu Tree, the company did not compensate him for his work from January to April 2023 or from June to August 2024.[30]  He also did not receive commissions for the contracts he secured.[31]  Cadieu Tree has failed to pay Dain the outstanding wages he was owed, an alleged $150,000.[32]   Dain has not received his Form W-2 for 2024 from Cadieu Tree either. [33]

17.    In 2024, Plaintiffs filed a Notice of Lis Pendens in connection with this civil action.  The Notice of Lis Pendens affects title to the property located at 3500 Carmel Road, Charlotte, North Carolina (the "Property"), which is the primary residence of Wiedner Defendants.[34]   The Property and all improvements on the Property was purchased solely with Wiedner Defendants' funds. [35]

---

[27] (Stephanie Countercl. ¶ 68; Dain Countercl. ¶ 49.)

[28] (Stephanie Countercl. ¶¶ 69-70.)

[29] (Stephanie Countercl. ¶ 71.)

[30] (Dain Countercl. ¶ 20.)

[31] (Dain Countercl. ¶ 21.)

[32] (Dain Countercl. ¶ 50.)

[33] (Dain Countercl. ¶ 51.)

[34] (Stephanie Countercl. ¶ 72; Dain Countercl. ¶ 52.)

[35] (Stephanie Countercl. ¶ 73; Dain Countercl. ¶ 53.)

18. The allegedly wrongly filed lis pendens has denied Wiedner Defendants access to an existing line of credit with Skyla Federal Credit Union that is secured by the Property. [36] The filing has prevented Wiedner Defendants from drawing funds under that credit facility.[37]

19. Wiedner Defendants allege that the lis pendens was filed to injure and harass Wiedner Defendants, and to jeopardize their access to much-needed financial liquidity while defending the instant lawsuit. [38]

20. Immediately after filing this lawsuit, Cadieu Tree and the Cadieu Family caused a news article to be published in the Charlotte Observer regarding the claims contained in the First Amended Complaint.[39] The news article, titled "Charlotte couple stole over $4M from wife's employer to fuel lavish lifestyle, lawsuit says" was published on 8 January 2025.[40] Wiedner Defendants allege that Cadieu Tree and the Cadieu Family caused this article to be published for the purposes of harassing, defaming, and otherwise harming Stephanie.[41]

21. On 3 February 2025, Plaintiffs filed a First Amended Complaint, asserting claims against Wiedner Defendants for constructive fraud, conversion, punitive

[36] (Stephanie Countercl. ¶ 74; Dain Coutnercl. ¶ 54.)

[37] (Stephanie Countercl. ¶ 74; Dain Countercl. ¶ 54.)

[38] (Stephanie Countercl. ¶ 75; Dain Countercl. ¶ 55.)

[39] (Stephanie Countercl. ¶ 76; Dain Countercl. ¶ 56.)

[40] (Stephanie Countercl. ¶ 77; Dain Countercl. ¶ 57.)

[41] (Stephanie Countercl. ¶ 77; Dain Countercl. ¶ 57.)

damages, avoidance of transfers under North Carolina Uniform Voidable Transactions Act (UVTA), injunctive relief against further transfers, attachment of assets, unfair and deceptive trade practices, and constructive trust.[42]  On 11 April 2025, Wiedner Defendants each filed an Answer, Counterclaim, and Third-Party Complaint that addressed Third-Party Defendants in addition to Plaintiffs.[43]  The Wiedner Defendants' Counterclaims asserted counterclaims for violations of the North Carolina Wage and Hour Act, abuse of process, breach of contract, unjust enrichment, slander of title, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and punitive damages against various members of the Cadieu family for reach claim for relief.[44]

22.    Plaintiffs filed a Motion to Dismiss and Strike on 13 June 2025, and Third-Party Defendants filed a Motion to Dismiss on 18 July 2025.  Through Plaintiffs' Motion, Plaintiffs seek dismissal of Wiedner Defendants' First, Third, Fourth, Fifth, Sixth, and Seventh Counterclaims pursuant to Rule 12(b)(6) and Rule 13(h).[45]  In that Motion, Plaintiffs also seek to strike Wiedner Defendants' First, Third, Fourth, and Fifth affirmative defenses for failing to state sufficient grounds for their support

---

[42] (Am. Compl.)

[43] (Stephanie Countercl.; Dain Countercl.)

[44] (Stephanie Countercl.; Dain Countercl.)

[45] (Pl.'s Mot.)

pursuant to Rule 12(f).[46] Through Third-Party Defendants' Motion, Third-Party Defendants seek dismissal of Wiedner Defendants' First, Third, Fourth, Sixth, and Eighth Counterclaims pursuant to Rule 12(b)(6) and Rule 13(h).[47] After full briefing, the Honorable A. Todd Brown held a hearing on both Motions on 14 November 2025, at which all parties were represented by counsel. Upon Judge Brown's retirement, this case was assigned to the undersigned, who set the matter for rehearing on 13 April 2026. At the 13 April 2026 rehearing, counsel for the parties indicated they did not wish to be heard. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

23. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the" disputed pleading, here the Wiedner Defendants' counterclaims. *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681 (1986). The motion should be granted only when: (1) the pleading "on its face reveals that no law supports" the asserted claim; (2) the pleading "on its face reveals the absence of facts sufficient to make a good claim;" or (3) the pleading "discloses some fact that necessarily defeats" the claim. *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC 38, at *8 (N.C. Super. Ct. June 19, 2019) (internal citations omitted).

24. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the counterclaims as true and view the facts and permissible inferences

---

[46] (Pl.'s Mot.)

[47] (Third-Party Mot. Dismiss.)

"in the light most favorable to" the non-moving party. *Id.*; *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Vanguard*, 2019 NCBC 38, at *8; *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56 (2001). The Court may consider documents that are the subject of the counterclaims and to which the counterclaims specifically refer without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007) (quoting *Oberlin Capital*, 147 N.C. App. at 60); *Vanguard*, 2019 NCBC 38, at *8.

## ANALYSIS

25.    The Court will take up each claim in turn with respect to the Motions.

### Rule 8 Notice-Pleading Standard

26.    As an initial matter, Rule 8 provides the notice-pleading standard governing the sufficiency of the counterclaims, and the more specific arguments addressed below are analyzed within that framework. "North Carolina remains a notice-pleading state," meaning "a pleading filed in this state must contain [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences . . . intended to be proved showing that the pleader is entitled to relief." *Martin v. Martin,* 266 N.C. App. 296, 299 (2019) (citing N.C.G.S. § 1A-1, Rule 8(a)(l) (quotation marks omitted) (alteration in original)). The requirements of Rule 8(a) are met when a pleading "gives sufficient notice of the events, or transactions which produced the claim to enable the adverse party to

understand the nature of it and the basis for it . . ." *Sutton v. Duke,* 277 N.C. 94, 104 (1970). "The adoption of the notice theory of pleading indicated the legislature's intention that controversies be resolved on their merits . . . following opportunities for discovery, rather than resolving them on technicalities of pleading." *Wentz v. Unifi., Inc.,* 89 N.C. App. 33, 38 (1988) (quoting *Smith v. City of Charlotte,* 79 N.C. App. 517, 528 (1986) (internal citations omitted)).

## Joinder Under Rule 13(h)

27. Joinder of a party under Rule 13(h) is required if the movant "establish[es] . . . (1) that the purported counterclaim defendants are required for granting complete relief of a properly pleaded counterclaim or crossclaim and (2) that the court can obtain jurisdiction over the purported counterclaim or crossclaim defendant." *Constr. Managers, Inc. of Goldsboro v. Amory*, 2019 NCBC LEXIS 122, at *7 (N.C. Super. Ct. Oct. 14, 2019). However, a valid "counterclaim must first exist, thereby making joinder necessary." *Davis Lake Comm. Ass'n v. Feldmann*, 138 N.C. App. 322, 323 (2000).

28. In ruling on a motion under Rule 13(h), the Court accepts as true the allegations made in support of the counterclaims or crossclaims. *Greentouch USA, Inc. v. Lowe's Co.,* 2025 NCBC LEXIS 7, at *4 (N.C. Super. Ct. Jan. 23, 2025) (internal citations omitted). The "Court must also consider whether defendants would be prejudiced if the counterclaim defendant was not added as a party to the action." *Biogas Corp. v. NC Biogas Dev., LLC*, 2023 N.C. Super. LEXIS 68, at *1 (N.C. Super. Ct. Aug. 16, 2023) (cleaned up).

29.     As an initial matter, the second element required to obtain jurisdiction is satisfied here. Rule 13(h) requires nothing more than the type of allegations that would be sufficient to satisfy Rule 12(b)(2) on the subject of jurisdiction. Under Rule 12(b)(2), "the allegations of the [pleading] must disclose jurisdiction although the particulars of jurisdiction need not be alleged," *Parker v. Town of Erwin*, 243 N.C. App. 84, 96 (2015) (cleaned up), and the trial court must determine whether the "allegations, if taken as true set forth a sufficient basis for the court's exercise of personal jurisdiction," *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.,* 169 N.C. App. 690, 693 (2005) (cleaned up). Here, Wiedner Defendants allege that "the Court has jurisdiction over the parties and subject matter of this Counterclaim."[48] Additionally, the Counterclaims allege that David demanded that Stephanie send Luke and Jake weekly payments, which she paid through her personal funds.[49] Such allegations are facially sufficient to satisfy the second element of Rule 13(h), although the Court does not make a final determination as to whether personal jurisdiction actually exists over Third-Party Defendants in this Court. *See Greentouch,* 2025 NCBC LEXIS 7, at *9.

30.     Here, Plaintiffs challenge the first 13(h) requirement by claiming that the joinder of Additional Counterclaim Defendants is not "required for the granting of

---

[48] (Stephanie Countercl. ¶ 9; Dain Countercl. ¶ 9.)

[49] (Stephanie Countercl. ¶¶ 43-45.)

complete relief."[50]  The Court disagrees.[51]  In *Bullard v. Berry Coal & Oil Co.*, the North Carolina Supreme Court held that the proper analysis is to determine whether defendants will be prejudiced if the counterclaim defendants are not added as parties. 254 N.C. 756, 759 (1961); *see also Greentouch,* 2025 NCBC LEXIS 7, at *4.  In other words, *will Wiedner Defendants be prejudiced if they cannot bring their claims against Third-Party Defendants in this action?*  This Court examined that issue in *Biogas Corp. v. NC Biogas Dev., LLC.*  In *Biogas*, this Court concluded that a third party's presence was required to grant complete relief because the defendants would be prejudiced by having to "split claims with significant factual and legal overlap" and that "it would not serve judicial efficiency or any party's interest to have . . . multiple actions."  *Biogas*, 2023 N.C. Super. LEXIS 68, at *2.

31.    Here, Plaintiffs argue that Wiedner Defendants' accusations fall into two categories: (1) insufficient and duplicative claims against David that are already pled against the existing Plaintiffs and (2) unrelated claims for unjust enrichment against Jake and Luke for unspecified amounts the Wiedner Defendants purportedly

---

[50] (Pl.'s Mem Supp. Mot. Dismiss & Mot. Strike [hereinafter, "Pl.'s Mem."] 4; Mem. Supp. Mot. Dismiss [hereinafter, "Third-Party Defs. Mem."] 4.)

[51] Mislabeling a pleading is not fatal if the pleading otherwise comports with the Rule 8 notice-pleading requirements.  North Carolina courts have consistently held that a mislabeled pleading does not invalidate the underlying claim, so long as the party has "properly stated a claim under some legal theory." *Strickland v. Town of Aberdeen*, 124 N.C. App. 430, 477 (1996); *see also Stanback v. Stanback*, 297 N.C. 181, 202 (1979); *New Hanover Cnty Bd. Of Educ. V. Stein*, 380 N.C. 94, 106 (2022); *Turner v. Thomas*, 369 N.C. 419, 794 (2016).  To deny a party his day in court because of his 'imprecision with the pen' would . . . run contrary to the notions of fundamental fairness." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644 (2008) (internal citations omitted).  Therefore, Plaintiffs' attempts at preventing joinder under Rule 14-based mislabeling arguments are not persuasive.

voluntarily transferred to them via a personal "Cash App."[52]  This categorization, however, is the extent of Plaintiffs' argument.  Plaintiffs contend that the David claims are "facially insufficient and warrant dismissal" and that the claims against Jake and Luke are irrelevant to the instant litigation.[53]

32.    As Wiedner Defendants illustrate, Jake, David, and Luke *do* have a clear link to the instant litigation.  Wiedner Defendants have alleged that "David demanded Stephanie disburse weekly payments of more than $2,000 to both Jake and Luke . . ." and that "Jake and Luke were paid through Stephanie's personal Cash App.  David instructed Stephanie to make the payments and reimburse herself through Cadieu Tree funds."[54]  Given these allegations, granting complete relief would require Jake, David, and Luke's presence.  Wiedner Defendants are also correct that prejudice is a possibility if Wiedner Defendants litigated a separate action against Jake, David, and Luke because significant factual and legal overlap exists as in *Biogas*.[55]

33.    Additionally, no prior court order is required under Rule 13(h).  Plaintiffs quote the Rule as follows:

---

[52] (Pl.'s Mem. 4; Third-Party Defs. Mem. 5.)

[53] (Pl.'s Mem. 5; Third-Party Defs. Mem. 5.)

[54] (Stephanie Countercl. ¶¶ 43-44; Dain Countercl. ¶¶ 34-35.)

[55] (Def.s Dain Wiedner & Stephanie Wiedner's Mem. L. Opp. Pl.'s Mot. Strike & Mot. Dismiss [hereinafter, "Wiedner Mem."] 10, ECF No. 33; Defs. Dain Wiedner & Stephanie Wiedner's Mem. L. Opp. To David Cadieu, Luke Cadieu, and Jake Cadieu's Mot. Dismiss [hereinafter, "Third-Party Wiedner Mem."] 8, ECF No. 42)

> When the presence of parties other than those to the original action is <u>required</u> for the granting of complete relief in the determination of a counterclaim or crossclaim, <u>the court shall order them</u> to be brought in as defendants as provided in these rules, if jurisdiction of them can be obtained. N.C.R. Civ. P. 13(h) (emphasis added).[56]

34.  Plaintiffs argue that Rule 13(h) is clear that a Court order is required *before* Defendants may add additional counterclaim defendants.  Wiedner Defendants highlight that Plaintiffs, however, do not substantiate this claim with any legal authority, including appellate precedent.[57]  Wiedner Defendants turn to *Amory* as an anchor to further dismiss Plaintiffs' interpretation of the Rule.[58]  The Court finds this analysis compelling.  In *Constr. Managers, Inc. of Goldsboro v. Amory*, 2019 NCBC 72 (N.C. Super. Ct., Oct. 14, 2019), the added counterclaim defendants made the same argument as the Plaintiffs in the instant case.  First, the *Amory* court considered the plain language of Rule 13(h), finding it "does not contain an express requirement that a motion be filed to add parties under Rule 13(h)." *Amory*, 2019 NCBC 72, at \*19. The language of Rule 13(h) only states that, when such parties are required to be brought in, the court shall order them to be brought in as defendants.  *Id.* (internal quotations marks omitted).  The "language suggests that the Court can order that parties be joined under Rule 13(h), with or without a motion . . ." *Id.*  In addition, *Amory* did not hold that Rule 13(h) expressly requires a motion; instead, it concluded that, under the facts there, the absence of a separate motion was not fatal. *Amory*,

---

[56] (Pl.'s Mem. 4; Third-Party Defs. Mem. 4.)

[57] (Wiedner Mem. 8; Third-Party Wiedner Mem. 7.)

[58] (Wieder Mem. 8; Third-Party Wiedner Mem. 8.)

2019 NCBC 72, at *20.  The *Amory* court treated "Amory's assertion of counterclaims against the [additional counterclaim defendants] in the amended complaint as Amory's motion pursuant to Rule 13(h)." *Id.*  Therefore, under Rule 13(h), the absence of a separate motion does not preclude the addition of Wiedner Defendants as additional counterclaim defendants in this action.

<u>North Carolina Wage and Hour Act Claim Against Cadieu Tree, Joseph Cadieu, and David Cadieu</u>

35.     To state a claim under N.C.G.S. § 95-25.1, *et seq.,* a party must plead: (1) the existence of an employer-employee relationship; (2) earned wages or compensation; and (3) violations of wage and hour provisions.  *See Horack v. S. Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305 (2002); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348 (1992); *Talley v. Earth Fare 2020, Inc.*, 2024 NCBC 81 (N.C. Super. Ct. Dec. 12, 2024); *Butler v. Millennium Advisors*, *LLC,* 2026 N.C. App. LEXIS 7, at *7 (N.C. Ct. App. 2026) (unpublished).

36.     Cadieu Tree, Joseph, and David assert that Wiedner Defendants' claim under the Wage and Hour Act violates rule 8(a) and that Wiedner Defendants do not provide any notice as to what constitutes the "unpaid compensation" they are claiming to be owed.[59]

37.     Here, Wiedner Defendants have sufficiently stated a claim under the Wage and Hour Act.  First, both Wiedner Defendants have pled that an employer-employee

---

[59] (Pl.'s Mem. 5; Third-Party Defs. Mem.  8.)

relationship existed with Cadieu Tree, Joseph, Marion, and David.[60]  Second, Wiedner Defendants describe the roles at Cadieu Tree that entitle them to collect wages.  Stephanie's alleged roles include solely managing Cadieu Tree's finances, ceasing improper Cadieu Tree business practices, funding business expenses with her personal credit card, managing Luke and Jake's LLC's finances, and executing contracts for Cadieu Tree.[61]  Dain's alleged roles included being the primary point of contact for sales, managing crew and customer service, managing and securing Cadieu Tree's largest contracts, and funding business expenses with personal credit.[62]  Third, Wiedner Defendants plead that they were not compensated wages and commissions earned during their employment with Cadieu Tree in violation of N.C. Gen. Stat. § 95-25.6, *et seq.*[63]

38.   Regarding notice of what constitutes "unpaid compensation" owed to Wiedner Defendants, Wiedner Defendants provided sufficient detail of the work they completed to earn wages and commissions.[64]  Wiedner Defendants also provided specific dates when they were not compensated and an accounting of the wages and commissions they claim are owed.[65]  The totals alleged are $550,000 for Stephanie,

---

[60] (Stephanie Countercl. ¶¶ 11, 79-81; Dain Countercl. ¶¶ 15, 48-50.)

[61] (Stephanie Counterclaim ¶¶ 15, 21, 27, 40, 51.)

[62] (Dain Counterclaim ¶¶ 13, 16, 19, 23.)

[63] (Stephanie Countercl. ¶¶ 32, 49, 70, 82, 83; Dain Countercl. ¶¶ 20-23, 51, 52.)

[64] (Wiedner Mem. 14; Third-Party Wiedner Mem. 14; Stephanie Countercl. ¶¶ 15, 21, 27, 40, 51; Dain Countercl. ¶¶ 13, 16, 19, 23.)

[65] (Stephanie Countercl. ¶ 50; Dain Countercl. ¶ 20.)

and $150,000 for Dain.[66]  Given that Cadieu Tree has access to its internal records and has knowledge of Wiedner Defendants' salaries and contracts sold during this period, the counterclaims meet the Rule 8 notice pleading standard.[67]

39.    Cadieu Tree, Joseph, and David's  last argument on the Wage and Hour Act claim is that Dain's allegations are barred by the two-year statute of limitations.[68] They argue that Dain alleges to have voluntarily provided uncompensated help from 2016 to 2022, then again from January to April 2023.[69]   However, they fail to recognize that Dain also pleads that he was not compensated for his work between June and August 2024.[70]  These dates fall within the two-year statute of limitations, which would prevent his claim from being dismissed.  To the extent Dain seeks recovery for unpaid wages falling outside the applicable limitations period, however, such recovery may be barred.  Accordingly, the Court **DENIES** Plaintiffs' Motion and **DENIES** Third-Party Defendants' Motion with respect to the First Counterclaim of each Wiedner Defendant.

<u>Breach of Contract Claim Against Cadieu Tree, Joseph, Marion</u>

40.    Under North Carolina law, a successful claim for breach of contract requires (1) a valid contract and (2) a breach of that contract's terms.  *See Poor v. Hill*, 138

---

[66] (Stephanie Countercl. ¶ 50; Dain Countercl. ¶ 20.)

[67] (Wiedner Mem. 14; Third-Party Wiedner Mem. 14.)

[68] (Pl.'s Mem. 6-7; Third Party Defs. Mem. 9.)

[69] (Pl.'s Mem. 6-7; Third Party Defs. Mem. 9.)

[70] (Pl.'s Mem. 6-7; Third Party Defs. Mem. 9.)

N.C. App. 19, 26 (2000); *Davis v. Davis Funeral Serv.*, 2023 NCBC LEXIS 79, at *19 (N.C. Super. Ct. June 12, 2023). "A breach discharges further performance only if the breach was material." *Chesson v. Rives*, 2016 NCBC LEXIS 92, at *76 (N.C. Super. Ct. Nov. 30, 2016); *see also Crosby v. Bowers*, 87 N.C. App. 338, 345 (1987). "A material breach is 'one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform.'" *Chesson*, 2016 NCBC LEXIS 92, at *76 (quoting *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208,220 (2015)). In other words, a term is material if it is such "an indispensable part of what both parties intended[,] . . . the contract would not have been made with the covenant omitted." *Wilson v. Wilson*, 261 N.C. 40, 43 (1964); *Gallaher v. Ciszek*, 2022 NCBC LEXIS 131, at *31 (N.C. Super. Ct. Nov. 4, 2022).

41. Cadieu Tree, Joseph, and Marion argue that Wiedner Defendants fail to state a claim for breach of contract. However, the Court disagrees. First, they allege that they "entered into a valid and enforceable contract wherein Cadieu Tree asked [them] to loan Cadieu Tree money and to fund Cadieu Tree's business expenses."[71] Wiedner Defendants also contend that Cadieu Tree agreed to pay them wages for work performed.[72] Wiedner Defendants allege that Cadieu Tree is in breach of these contracts because they failed to reimburse them for business and personal expenses,

---

[71] (Stephanie Countercl. ¶ 93; Dain Countercl. ¶ 62.)

[72] (Stephanie Countercl. ¶¶ 11, 79-81; Dain Countercl. ¶¶ 15, 48-50.)

failing to pay wages, and failing to pay commissions.[73]  Every element of a breach of contract claim is pled here.  Accordingly, the Court **DENIES** Plaintiffs' Motion and **DENIES** Third-Party Defendants' Motion with respect to the Third Counterclaim of each Wiedner Defendant.

<u>Unjust Enrichment Claim Against Joseph, Marion, David, Jake, and Luke</u>

42.  "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party.  The benefit must not have been conferred officiously, that is, it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances.  The benefit must not be gratuitous and it must be measurable." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988).  "If there is a contract between the parties, the contract governs the claim and the law will not imply a contract." *Southeastern Shelter Corp. v. Btu Inc.,* 154 N.C. App. 321, 330 (2002); *iTi Commcns v. Seamon, Whiteside, & Assocs.*, 2025 NCBC LEXIS 129, at *19 (N.C. Super. Ct. Sept. 30, 2025).

43.  Joseph, Marion, David, Jake, and Luke seek to dismiss the unjust enrichment claim because "Defendants' claims for unjust enrichment are similarly defective for lack of adequate notice as to what 'benefit' they supposedly conveyed to which party."[74]  Here, the pleadings state a claim for unjust enrichment and provide notice as to the benefit conveyed.  In the pleadings, Wiedner Defendants contend that

---

[73] (Stephanie Countercl. ¶ 96; Dain Countercl. ¶ 65.)

[74] (Pl.'s Mem. 8; Third-Party Defs. Mem. 5.)

they conferred substantial funds to Cadieu Tree and the Cadieu Family.[75] Specifically, Wiedner Defendants accurately identify that Stephanie's Counterclaims state that Joseph, Marion, and David directed Stephanie to make purchases for Cadieu Tree with her personal credit card.[76] Wiedner Defendants conferred these benefits under the impression that they would be reimbursed.[77] Not only do the pleadings assert that Wiedner Defendants have not been reimbursed for the benefits conveyed, they also allege the exact benefit conveyed on Joseph, Marion, David, Jake, Luke, and Cadieu Tree.[78] This cuts against Joseph, Marion, David, Jake, and Luke's analysis, which is anchored by *Plasman* and *Oberlin Capital*.[79] The failure to reimburse Wiedner Defendants for these benefits is explained at length throughout the Counterclaims.[80] Thus, Wiedner Defendants have pled all elements of an unjust enrichment claim.

---

[75] (Stephanie Countercl. ¶¶ 27, 28, 30-32, 98-104; Dain Countercl. ¶¶ 69-70.)

[76] (Stephanie Countercl. ¶ 28.)

[77] (Wiedner Mem. 19; Third-Party Wiedner Mem. 11.)

[78] (Stephanie Countercl. ¶¶ 27, 30-32; Dain Countercl. ¶ 23.)

[79] (*See* Pl.'s Mem. 8-9; Third-Party Defs. Mem. 6-7.) Plaintiffs and Third-Party Defendants cite to *Plasman* and *Oberlin Capital* to contend that dismissal of claims is appropriate where allegations are made against individuals collectively and the allegations fail to clarify how each individual personally participated in the alleged wrongdoing. *Plasman v. Decca Furniture (USA), Inc.*, 257 N.C. App. 684, 690-91 (2018); *see also Oberlin Capital,* 147 N.C. App. at 57. This line of analysis is inapplicable in the instant case because the counterclaims avoid vagueness by clearly explaining the scope of the funds, the manner they were distributed, and who they were distributed to.

[80] (Stephanie Countercl. ¶¶ 27, 28, 30-32, 98-104; Dain Countercl. ¶¶ 24, 65, 71.)

44.    Accordingly, the Court **DENIES** Plaintiffs' Motion and **DENIES** Third-Party Defendants' Motion with respect to the Fourth Counterclaim of each Wiedner Defendant.

Slander of Title Claim Against Cadieu Tree, Joseph, Marion, and David

45.    To establish a claim of slander of title, a plaintiff must allege: "(1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages." *Broughton v. McClatchy Newspapers. Inc.*, 161 N.C. App. 20, 30 (2003); *Hill v. Ewing*, 296 N.C. App. 624, 629 (2024). Filing a lis pendens can constitute the utterance of slanderous words. *Kingsdown, Inc. v. Hinshaw*, 2016 NCBC LEXIS 15, at *107 (N.C. Super. Ct. Feb. 17, 2016) ("Mr. Hinshaw alleges that Kingsdown uttered false, malicious and slanderous words by filing the lis pendens on the Ocean Isle Property"). "Special damages are usually synonymous with pecuniary loss," *Iadanza v. Harper*, 169 N.C. App. 776, 779 (2005), and are "[t]hose which are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances of conditions." *Canady v. Mann*, 107 N.C. App. 252, 257 (1992); *Kingsdown, Inc.,* 2016 NCBC LEXIS 15, at *109.

46.    Here, Cadieu Tree, Joseph, Marion, and David contend that Wiedner Defendants state in conclusory and rote fashion that they "uttered slanderous words" regarding the title of the Property and that their "representations were false."[81] They

---

[81] (Pl.'s Mem. 9.)

assert that Wiedner Defendants must provide greater detail as to what they mean by false "slanderous words" and allege what special damages they claim to incur as a result of such an utterance.[82]

47.    Wiedner Defendants satisfy the first two elements of the slander of title claim.  For the first element, they identified a wrongly filed Notice of Lis Pendens on their Property, which constitutes the utterance of slanderous words under *Kingsdown*.[83]  For the second element, Wiedner Defendants allege that Cadieu Tree, Joseph, Marion, and David's representations were false and that the Property and improvements on the Property were purchased "solely" with Stephanie and Dain's funds, which would make the lis pendens improper.[84]  Indeed, North Carolina courts have consistently recognized that a party who files a lis pendens for improper purposes "must be liable for the legal consequences." *Chatham Estates v. Am. Nat'l Bank*, 171 N.C. 579, 582 (1916); *see also Whyburn v. Norwood,* 47 N.C. App. 310, 315 (1980).  Wiedner Defendants satisfy the third element because they allege that the lis pendens was filed to "injure and harass" Stephanie and Dain, and to "jeopardize their access to much-needed financial liquidity while Defendants defend the instant lawsuit."[85]  As for the fourth element, Wiedner Defendants identified and pled special damages.  Specifically, Wiedner Defendants allege that the improperly filed lis

---

[82] (Pl.'s Mem. 9.)

[83] (Stephanie Countercl. ¶ 72; Dain Countercl. ¶ 52.)

[84] (Stephanie Countercl. ¶¶ 72-73, 107; Dain Countercl. ¶¶ 52-53, 76.)

[85] (Stephanie Countercl. ¶ 75; Dain Countercl. ¶ 55.)

pendens has denied Stephanie and Dain access to an existing line of credit with Skyla Federal Credit Union that is secured by the Property.[86] This filing, as a result, has allegedly prevented Wiedner Defendants from drawing funds from that credit facility and caused "immediate and ongoing financial harm."[87] Accordingly, the Court **DENIES** Plaintiffs' Motion with respect to the Fifth Counterclaim of each Wiedner Defendant.

IIED/NIED Claims Against Cadieu Tree, Joseph, Marion, and David

48. The essential elements of IIED are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82 (1992) (citation omitted). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law for the trial judge," *Lenins v. K–Mart Corp.*, 98 N.C. App. 590, 599 (1990). "A claim for intentional infliction of emotional distress exists 'when a defendant's conduct exceeds all bounds usually tolerated by decent society[.]' " *Watson v. Dixon*, 130 N.C. App. 47, 52–53 (1998), *on reh'g*, 132 N.C. App. 329 (1999), *aff'd*, 352 N.C. 343 (2000) (quoting *Stanback v. Stanback*, 297 N.C. 181, 196 (1979)) (defendant engaged in extreme and outrageous conduct when he "frightened and humiliated [plaintiff] with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, … finally culminating in veiled threats to her personal safety"). Conduct is extreme

---

[86] (Stephanie Countercl. ¶ 74; Dain Countercl. ¶54.)

[87] (Stephanie Countercl. ¶ 74; Dain Countercl. ¶ 54.)

and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, cert. denied, 314 N.C. 114 (1985). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not be found to constitute extreme and outrageous conduct. *Sopko v.* Stancil, 2015 NCBC LEXIS 15, at *7-8 (N.C. Super. Ct. Feb. 10, 2025) (internal citations omitted).

49.     To establish a claim for NIED, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990).

50.     Here, Wiedner Defendants do not sufficiently plead a claim for IIED. Wiedner Defendants allege that Cadieu Tree and the Cadieu Family caused a news article to be published in the Charlotte Observer regarding the false claims contained in the First Amended Complaint.[88]    Wiedner Defendants conclude that the "public humiliation and reputational damage based on false claims" amount to extreme and outrageous conduct.[89]    Wiedner Defendants also contend that such actions intended to cause severe emotional distress, and did in fact do so.[90]    Lastly, Wiedner

---

[88] (Stephanie Countercl. ¶ 76; Dain Countercl. ¶ 56.)

[89] (Wiedner Mem. 21; Third-Party Wiedner Mem. 19.)

[90] (Wiedner Mem. 22; Third-Party Wiedner Mem. 20.)

Defendants describe multiple scenarios where David allegedly threatened to physically harm them, including "that he would shoot [them] in the face."[91]

51.     However, the Charlotte Observer article in question was published by a third-party journalist approximately a month before the filing of the First Amended Complaint and only references the original complaint.[92]  As Plaintiffs and David put it, these allegations are self-defeating.[93]  The article only cites to the bare allegations of the original Complaint, which statements are absolutely privileged.[94] *Rickenbacker v. Coffey*, 103 N.C. App. 352, 357 (1991) (explaining that "if pertinent or relevant, statements in pleadings and other papers filed with the court are absolutely privileged"); *see also Gibson v. Mut. Life Ins. Co. of New York*, 121 N.C. App. 284, 290 (1996).  Plaintiffs and David are correct that allowing Wiedner Defendants to claim IIED or NIED based on a news organization's reporting of absolutely privileged statements would open a "back door" to defamation, slander, IIED, and NIED claims that result from the actions of third parties like news organizations.[95]  Further, Plaintiffs and David's counsel declined to comment, and no quotations from Plaintiffs were included in the article.[96]  This makes it impractical

---

[91] (Wiedner Mem. 22; Third-Party Wiedner Mem. 20; Stephanie Countercl. ¶¶ 64, 119; Dain Countercl. ¶¶ 44, 90.)

[92] (Pl.'s Mem. 11; Third-Party Defs. Mem. 12.)

[93] (Pl.'s Mem. 11; Third-Party Defs. Mem. 12.)

[94] (Pl.'s Mem. 12; Third-Party Defs. Mem. 12. )

[95] (Pl.'s Mem. 12; Third-Party Defs. Mem. 12.)

[96] (Pl.'s Mem. 12; Third-Party Defs. Mem. 12.)

for Wiedner Defendants to claim that Plaintiffs and David "caused" emotional distress because the third party news organization published an article solely based on a publicly available and absolutely privileged record. Additionally, David's shooting threats are "mere threats" that do not rise to the level of extreme and outrageous conduct as explained in *Sopko*.

52. In addition, Plaintiffs and David are correct that nowhere does either Wiedner Defendant identify any recognized legal duty on the part of a Plaintiff that was breached to result in supposed emotional distress to Wiedner Defendants.[97] "The failure to allege such a duty owed . . . is fatal to an NIED claim on a motion to dismiss." *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149 (2013) (citing *Guthrie v. Conroy*, 152 N.C. App. 15, 25 (2002)("[P]laintiff alleges no duty that [defendant] owed plaintiff.... Absent a breach of duty of care, plaintiff's suit against [defendant] for NIED cannot be maintained.")).

53. Notably, the conduct alleged by Wiedner Defendants constitutes *intentional* misconduct on the part of the Plaintiffs and David. Under North Carolina law, this warrants dismissal of the NIED claim. "Allegations of intentional conduct, such as these, even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim." *Sheaffer v. County of Chatham*, 337 F.Supp.2d 709, 734 (M.D.N.C. 2004) ("Even taking all these allegations as true, they demonstrate intentional acts for which Plaintiff has made other claims; they do not show negligent acts required for a claim of negligent infliction of emotional distress.").

_____

[97] (Pl.'s Mem. 12; Third-Party Defs. Mem. 13.)

Wiedner Defendants, therefore, have failed to properly plead an element essential to their NIED claim.

54. Lastly, the counterclaims do not allege facts that support the existence of actual severe emotional distress. This also warrants their dismissal. To validly plead an IIED or NIED claim, "a plaintiff must allege severe emotional distress, which has been defined as 'any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" *Id.* Failure to do so mandates dismissal of the claim. *See Holleman v. Aiken*, 193 N.C. App. 484, 502 (2008) (affirming dismissal of NIED claims where complaint did "not make any specific factual allegations as to [plaintiff's] 'severe emotional distress'"). The Counterclaims only allege that "the Cadieu Family's conduct did, in fact, cause severe emotional distress," but do not provide specific details as to what that severe emotional distress entails. [98] Accordingly, the Court **GRANTS** Plaintiffs' Motion with respect to the Sixth and Seventh Counterclaims of each Wiedner Defendant. The Court also **GRANTS** Third-Party Defendants' Motion with respect to the Sixth Counterclaim of each Wiedner Defendant.

<u>Punitive Damages Claim Against Cadieu Tree, Joseph, Marion, and David</u>

55. "[P]unitive damages are a remedy rather than a standalone cause of action." *Halikierra Cmty. Servs. LLC v. N.C. HHS*, 2021 NCBC LEXIS 27, at *25 (N.C. Super.

---

[98] (Stephanie Countercl. ¶ 113; Dain Countercl. ¶ 84)

Ct. Mar. 25, 2021); *see also Collier v. Bryant*, 216 N.C. App. 419, 434 (2011) ("Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action.").

56. Because Wiedner Defendants purport to assert a claim for relief out of what is merely a remedy, the Court **GRANTS** Third-Party Defendants' Motion with respect to the Eighth Counterclaim of each Wiedner Defendant and this claim is hereby **DISMISSED** without prejudice. Because the award of punitive damages is a valid remedy against a litigant, the dismissal of this claim is without prejudice, and does not prevent the Court from awarding, nor Wiedner Defendants from seeking, this same remedy later on in this litigation upon a showing of factual and legal entitlement.

<u>Wiedner Defendants' Affirmative Defenses</u>

57. Having addressed the Motions to Dismiss, the Court next addresses Wiedner Defendants' affirmative defenses.

58. Under Rule 12(f), a trial court "may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C.R. Civ. P. 12(f). "Rule 12(f) motions are viewed with disfavor and are infrequently granted." *Daily v. Mann Media, Inc.*, 95 N.C. App. 746, 748–49 (1989) (cleaned up). A decision to grant or deny a Rule 12(f) motion to strike is within the trial court's sound discretion. *Reese v. City of Charlotte*, 196 N.C. App. 557, 567 (2009).

59.    Significantly for present purposes, "[a] motion under Rule 12(f) is a device to test the legal sufficiency of an affirmative defense," *Faulconer v. Wysong & Miles Co.*, 155 N.C. App. 598, 601 (2002), and "[t]he requirements for pleading a defense are no more stringent than the requirements for pleading a claim for relief." *Vernon v. Crist*, 291 N.C. 646, 653 (1977). As a result, a Rule 12(f) motion to strike affirmative defenses is considered under the same standard as a motion to dismiss claims under Rule 12(b)(6). *See, e.g., Mozingo v. N.C. Nat'l Bank*, 31 N.C. App. 157, 163 (1976) (noting that Rule 12(f) is an "analogue to" Rule 12(b)(6) and that "the same tests apply" to both rules); *see also* N.C.R. Civ. P. 8(a)–(c) (setting forth pleading requirements for both claims for relief and defenses).

60.    Thus, "a defense that is conclusory, contextually incomprehensible, not well-grounded in fact, speculative, or otherwise devoid of any factual support may be stricken pursuant to Rule 12(f), since such a defense will ordinarily fail to give a party sufficient notice of the nature of the defense as required by Rule 8." *Merrell v. Smith*, 2020 NCBC LEXIS 126, at *7 (N.C. Super. Ct. Oct. 22, 2022); *see, e.g., Carpenter v. Carpenter*, 189 N.C. App. 755, 761 (2008) (reversing striking of answer containing defenses that could have "a possible bearing on the litigation"); *Daily*, 95 N.C. App. at 749 (affirming the striking of a defense that had "no possible bearing upon the litigation").

61.    In their Counterclaims, Wiedner Defendants presented the following affirmative defenses:

1.  Plaintiffs' claims for damages are barred in whole or in part as a result of the doctrine of laches, estoppel, and unclean hands.

2. Plaintiffs' claims are barred in whole or in part as they violate the pertinent statute of limitations and/or repose.
3. Plaintiffs' claims for damages are barred in whole or in part because they have no damages that flow from any alleged conduct in Plaintiffs' claims.
4. Plaintiffs' claims are barred in whole or in part by their failure to mitigated alleged damages, if any.
5. Plaintiffs' claims are barred in whole or in part because their damages, if any, were caused by intervening causes or by third parties over whom the Wiedner Defendants had no control.[99]

62. Considering the other facts pleaded, Wiedner Defendants provided sufficient detail in their First, Second, Fourth, and Fifth affirmative defenses to put Plaintiffs on notice of the transactions or occurrences they intend to prove. North Carolina is a "notice pleading" state, and Wiedner Defendants were provided facts and details sufficient to put Plaintiffs on notice of the underlying nature of the first defense, "laches, estoppel, and unclean hands." *Martin*, 266 N.C. at 296.

63. Here, while the rote recitation alone might not be sufficient, the "Factual Allegations" section immediately follows the "Affirmative Defenses" section, so Plaintiffs would be on notice of the facts that give rise to the affirmative defenses, as Wiedner Defendants highlight.[100] Specifically, the facts that give rise to the affirmative defenses would be (1) Joseph's stage five vascular dementia; (2) Cadieu Tree expressly requesting that Wiedner Defendants pay business expenses with their

---

[99] (Stephanie Countercl. ¶ 1-5; Dain Countercl. ¶ 1-5.) These paragraph numbers refer to the "Affirmative Defenses" section of Stephanie and Dain's "Answer to Plaintiff's First Amended Complaint, Affirmative Defenses, Counterclaims and Third-Party Complaint.

[100] (Wiedner Mem. 23; Stephanie Countercl. 17-19; Dain Countercl. 17-19.)

personal credit and reimburse themselves from Cadieu Tree funds; and (3) Cadieu Tree owing Wiedner Defendants unpaid wages, commissions, and reimbursements.[101]

64.    As for the Second Affirmative Defense, Stephanie was hired by Cadieu Tree in 2016 and Cadieu Tree states that, "Stephanie Wiedner intentionally sought . . . access and control of Cadieu Tree's operations account . . ."[102]  To the extent Plaintiffs contend Wiedner Defendants engaged in tortious conduct over three years before the filing of the Complaint, these claims would be barred by the applicable statute of limitations if proven.

65.    The Fourth and Fifth affirmative defenses also do not require further clarification.    Rule 8(e)(2) provides that "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically . . ." N.C.G.S. § 1A-1, Rule 8(e)(2) (emphasis added).  If discovery reveals a failure by Plaintiffs to mitigate their damages or a third-party who committed the conduct that Wiedner Defendants are accused of, these affirmative defenses become relevant.  Wiedner Defendants are correct that this is why Rule 8 explicitly allows hypothetical pleadings, especially at the 12(b)(6) stage prior to discovery.[103]  This also makes sense with the Rule 12(f) standard that "matters should not be stricken unless it has no possible bearing upon the litigation.  If there is any question as to whether an issue may arise, the motion

---

[101] (Stephanie Countercl. ¶¶ 18, 28, 49-53.)

[102] (Am. Compl. ¶ 21.)

[103] (Wiedner Mem. 24.)

[to strike] should be denied." *Carpenter*, 189 N.C. App. at 766 (alteration in original) (quoting *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316 (1978)).

66. Once again, Wiedner Defendants highlight that "mere vagueness or lack of detail is not ground for a motion to dismiss. Such a deficiency should be attacked by a motion for a more definite statement." *Sutton*, 277 N.C. at 102. If Plaintiffs solely feel that Wiedner Defendants' affirmative defenses lack sufficient factual basis, they may move for a more definite statement under Rule 12(e), not Rule 12(f). Accordingly, the Court **DENIES** Plaintiffs' Motion with respect to Defendants' First, Third, Fourth, and Fifth affirmative defenses.

IV.

CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS in part** and **DENIES in part** the Motions as follows:

    a. Plaintiffs' Motion is **GRANTED** with respect to Wiedner Defendants' Sixth and Seventh Counterclaims.

    b. Third-Party Defendants' Motion is **GRANTED** with respect to Wiedner Defendants' Sixth and Eighth Counterclaims.

    c. Plaintiffs' Motion is **DENIED** with respect to Wiedner Defendants' First, Third, Fourth, and Fifth Counterclaims.

    d. Plaintiffs' Motion is **DENIED** with respect to Wiedner Defendants' First, Third, Fourth, and Fifth affirmative defenses.

e. Third-Party Defendants' Motion is **DENIED** with respect to Wiedner Defendants' First, Third, and Fourth Counterclaims.

Additionally, the Court hereby **DISMISSES** Wiedner Defendants' Eighth Counterclaim without prejudice.

**SO ORDERED**, this the 15th day of April 2026.

/s/ A. Graham Shirley
A. Graham Shirley
Special Superior Court Judge
  for Complex Business Cases